## DENMAN TIRE & RUBBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11277.

United States Court of Appeals
Sixth Circuit.

Nov. 13, 1951.

I. W. Sharp, Cleveland, Ohio, I. W. Sharp, J. H. Kellogg, and R. G. Hengst, all of Cleveland, Ohio, on brief, for petitioner.

Morton K. Rothschild, Washington, D. C., Theron Lamar Caudle, Ellis N. Slack, A. F.

Prescott, and Morton K. Rothschild, all of Washington, D. C., on brief, for respondent.

Before HICKS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The petitioner, Denman Tire & Rubber Company, seeks a review of the ruling of the Tax Court which determined a deficiency in petitioner's excess profits tax for the taxable year 1943 in the amount of $125,330.80. The controversy involves the legal effect on petitioner's taxable income for the year 1941 of two transactions of petitioner in that year. If these transactions resulted in taxable gain to the petitioner, as claimed by the respondent, the petitioner's loss for the year 1941 was thereby reduced with a resulting reduction in the carry-over loss used by petitioner in computing excess profits net income in the succeeding years of 1942 and 1943.

The facts are not in dispute and are given in detail in the Findings of Fact and Conclusions of Law of the Tax Court reported in 14 T.C. 706. For the purposes of this opinion, the following summary is sufficient.

Pursuant to reorganization proceedings under provisions of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., the petitioner, as of October 1, 1937, took over the assets and liabilities of an Illinois corporation of the same name, which had been engaged in the manufacture of automobile tires. Included among the liabilities assumed was an obligation to the United States arising out of the manufacturer's excise taxes, for which petitioner executed to the Collector of Internal Revenue a promissory note dated July 1, 1937 in the principal amount of $144,572.-47 with interest at 4% and payable on April 2, 1940, which was secured by a second mortgage upon certain of the physical assets of petitioner. As of May 23, 1941, this indebtedness had been reduced to $125,500. In May 1941, the petitioner found itself unable to maintain the schedule of payments. Following negotiations, in which petitioner advised the Government that if payment in full was insisted upon the Government would have to take over the factory, a compromise settlement of $62,500 was agreed

upon. Thereafter petitioner found itself unable to · raise this amount. Following further negotiations, in which petitioner advised that $50,000 was the most that could be raised, the Government on September 30, 1941, accepted an offer to pay $50,000 "in full satisfaction of the outstanding balance due on the notes in the amount of $125,500." This amount was paid and the Collector surrendered to petitioner the notes and mortgage.

During October 1941, the owner of certain outstanding bonds of petitioner in the face amount of $2,500, on which there was unpaid interest as of October 31, 1941 in the amount of $320.83, requested petitioner to make an offer to purchase the bonds. Petitioner's offer of $1,250 was accepted, and, on October 31, 1941, this amount was paid and the bonds were delivered to petitioner and cancelled.

At the time of the two transactions above referred to, petitioner was in an unsound financial condition and was unable to meet its obligations as they matured, but was not insolvent in the sense that the total value of its assets was less than the amount of its liabilities before or after the discharge of these items of indebtedness.

In the corporation tax return for 1941, filed March 14, 1942, petitioner reported as "Other Income, Gain on Settlement of Indebtedness $75,500" and "Excess of Face Value over Cost of Bonds Repurchased $1,570.83." This return showed a net loss of $4,990.87 and no tax was paid for 1941. Petitioner did not at the time of making and filing this return make and file with the return its consent to the regulations prescribed under Section 113(b)(3) of the Internal Revenue Code then in effect, as provided by Section 22(b) (9), 26 U.S.C.A. §§ 22(b) (9), 113(b) (3), which sections it now claims are applicable to the transactions.

On April 21, 1944, petitioner filed a claim for refund in the amount of $32,294.73 of the income tax paid by petitioner for the calendar year 1942, and contemporaneously therewith filed an amended income and declared value excess profits tax return for the year 1941 in which the $75,500 indebtedness eliminated by the transaction with the Government and $1,392.23 of the indebtedness

eliminated by the transaction with the owner of the bonds were excluded from gross income in the computation of taxable income for the year 1941, thereby reporting a net loss of $81,883.10 for the calendar year 1941 instead of the $4,990.87 net loss as shown on the original return. With this amended return, petitioner, seeking to avail itself of the provisions of Section 22(b) (9), I. R. C., filed a "consent" on Form 982 to the adjustment of the basis of its property under Section 113(b) (3) by the $76,892.23 of surplus credits representing cancellation of indebtedness so excluded from gross income in the amended return for the year 1941. The Commissioner in his determination of the deficiency did not give effect to the amended return with respect to excluding said amounts from gross income, but left the amounts undisturbed as petitioner first returned them. This resulted in a reduction of the net loss carry-over, claimed by petitioner, and in a deficiency assessment for the calendar year 1943. The Tax Court upheld the ruling of the Commissioner, and following a recomputation of the tax, adjudged the deficiency herein under review.

■■ We agree with the ruling of the Tax Court, and for the reasons stated by it in its opinion, that the amounts of petitioner's indebtedness eliminated by the two transactions in 1941 were taxable income for the year 1941, rather than non-taxable gifts as contended by petitioner. The ruling in Helvering v. American Dental Co., 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785, relied upon by petitioner, must be considered in conjunction with the Court's later ruling in Commissioner v. Jacobson, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477. In the Jacobson case, the Court said that whether the transaction is in fact a transfer of something for the best price available or is a release of only a part of the claim for cash and a gift of the remainder is a factual one, and that a transaction could not be considered as involving a gift unless the facts showed there was an intent upon the part of the creditor to transfer something for nothing. The Tax Court found as a fact that the Government neither expressly nor impliedly manifested any intention of making a gift to the petitioner, but was seeking the best settlement it could get from a corporation in an unsound financial condition, although not insolvent. In our opinion, the finding is fully supported by the evidence. The transaction with the bondholder is of a similar nature and is also controlled by the ruling in United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131.

We are more concerned with petitioner's contention that the two items involved should not have been included in gross income because of the provisions of Section 22(b) (9) of the Internal Revenue Code as amended. This section provides that in the case of a corporation, there shall not be included in gross income the amount of any income of the taxpayer attributable to the discharge, within the taxable year, of any indebtedness of the taxpayer or for which the taxpayer is liable, evidenced by a security, if "at the time of such discharge the taxpayer was in an unsound financial condition, and if the taxpayer makes and files at the time of filing the return, in such manner as the Commissioner, with the approval of the Secretary, by regulations prescribes, its consent to the regulations prescribed under section 113(b) (3) then in effect." Such consent authorizes a reduction by the Commissioner of the basis of the taxpayer's property for determining gain or loss from its sale or other disposition in an amount not greater than the amount of income realized. The petitioner contends that the consent filed by it with the amended return, filed on April 21, 1944, complied with the conditions of Section 22(b) (9). Commissioner contends that such consent, to be effective, should have been filed on March 14, 1942 when the tax return for 1941 was originally filed, or with a timely amendment before the expiration date for the filing of such return, and that the filing of such consent with an amended return on April 21, 1944 was too late and ineffective. The Tax Court sustained the Commissioner.

■ The Commissioner relies upon J. E. Riley Investment Co. v. Commissioner, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36. In that case the Supreme Court held that where a statute provides for an election by the taxpayer, in his first return after the enactment of the statute, between different meth-

ods of proceeding, such an election must be made once and for all in the first return filed thereafter, and that the election can not thereafter be changed by an amended return filed after the expiration of the statutory period for filing the original return. This ruling answers any contention that might be made by reason of the rulings of this Court in Glenn v. Oertle Co., 6 Cir., 97 F.2d 495, approved by the Supreme Court in Haggar Co. v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340, and later followed in United States v. Lederer Terminal W. Co., 6 Cir., 139 F.2d 679. In those cases the amended return, which was held to be the first return required by the statute, was timely filed within the period provided for filing the original return, which fact is cited by the Supreme Court as the distinguishing feature between those cases and the Riley Investment Co. case. In the present case, the amendment was filed after the expiration of the statutory period for filing. Petitioner relies upon a later decision of this Court in Gentsch v. Goodyear Tire & Rubber Co., 6 Cir., 151 F.2d 997, in which we held that the ruling in J. E. Riley Investment Co. v. Commissioner, supra, was not applicable, under the particular facts involved in that case, to an election made by an amended return, filed after the statutory period for filing the original return, which changed the method of computing the tax from the method selected in the original return. The opinion pointed out, that assuming the statute required the taxpayer to make an election, there was no basis for making an election when the original return was filed, and in fact no election was then made, in that the elements constituting the need for an election came into existence at a later time at which time the taxpayer was first confronted with the necessity of making the election called for, and to deny him the right to make such an election at such later time would as a practical matter nullify the real purpose of the statute. So construed, the case authorized a deferred election, rather than a change in an election previously made. The factual differences in the Gentsch case supported its ruling. The same reasoning, namely, the non-existence of facts requiring an election at the time of filing the original return, is the basis for this Court's ruling in Lucas v. Sterling Oil and Gas Co., 6 Cir., 62 F.2d 951. In our opinion, the present case involves an attempt to change an election previously made, and is more analogous to J. E. Riley Investment Co. v. Commissioner, than it is to Gentsch v. Goodyear Tire & Rubber Co. At the time of making the original return in 1942 all the material facts were known to the petitioner. It then had the option of electing "at the time of filing the return" under which of two statutory methods it would proceed. For reasons which seemed advantageous taxwise to the petitioner at that time, it unequivocally elected to treat the gain resulting from a cancellation of indebtedness as taxable income. In so doing it avoided a reduction in the basis of its property for determination of gain or loss upon a later disposition of it, and at the same time incurred no taxable liability for the year 1941. No change in the procedure elected was requested in 1943 when the return for 1942 was filed, disclosing a tax liability which was paid. When continued business prosperity in 1943 disclosed a heavy tax liability for 1943 which could be materially reduced, together with a substantial refund of taxes paid for 1942, by electing retroactively to treat the income items differently from the way in which they had been originally treated, the taxpayer found it advantageous to change its election previously made. As pointed out in J. E. Riley Investment Co. v. Commissioner [311 U.S. 55, 61 S.Ct. 97,]—"We are not dealing with an amendment designed merely to correct errors and miscalculations in the original return. * * * Petitioner is seeking by this amendment not only to change the basis upon which its taxable income was computed for 1934 but to adopt a new method of computation for all subsequent years. * * *

"If petitioner's view were adopted, taxpayers with the benefit of hindsight could shift from one basis of depletion to another in light of developments subsequent to their original choice. It seems clear that Congress provided that the election must be made once and for all in the first return in order to avoid any such shifts." In the

present case, tax consequences in succeeding years flowed from the election made in March 1942, such as yearly depreciation thereafter and taxable gain or loss in the event of a sale. In the Gentsch case the time element was not important in that the election involved tax liability for only the one year under consideration and no practical administrative problem was involved. We recognize that Section 22(b)(9) refers to the filing of taxpayer's consent "at the time of filing the return," without specifically requiring it to be the first return. But obviously this refers to the return for the taxable year in question rather than to any return for a later year, which presents the same question of whether an amended return filed out of season, changing an election previously made, must be given effect. We agree with the conclusion of the Tax Court that the filing of the consent on Form 982 in April 1944 came too late.

The judgment of the Tax Court is affirmed.