CHATOM CO., LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76666. Filed June 20, 1961.

*Wareham C. Seaman, Esq.*, and *Thomas E. Smail, Jr., Esq.*, for the petitioner.
*Sidney U. Hiken, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* The Commissioner determined deficiencies in income tax in the amounts of $2,959.02 and $58,542.56 for the fiscal years ended July 31, 1954, and July 31, 1955, respectively.

The petition herein raises issues appertaining only to fiscal 1955. The question for decision is whether the Commissioner properly included in income the sum of $133,270.89 as the result of certain transactions hereinafter described between petitioner and the Commodity Credit Corporation.

All of the facts are stipulated and are so found. In pertinent summary they are as follows:

The petitioner, a corporation organized in 1932 under the laws of the State of California, has at all times since its inception (a) engaged

in the business of farming, (b) computed its taxable income under an accrual method of accounting, and (c) filed its income tax returns on the basis of fiscal years ending July 31. It filed its return for the fiscal year 1955 with the district director of internal revenue at San Francisco, California.

On July 21, 1948, the petitioner delivered for storage to H. S. Brietigam, a public warehouseman, 123,576 bushels of No. 2 Bright Western Barley which the petitioner, in the ordinary course of its regular business, had produced to sell. The delivery was evidenced by Brietigam's warehouse receipt dated July 21, 1948.

On November 12, 1948, the petitioner borrowed $153,234.24 from the Commodity Credit Corporation (herein referred to as the CCC) for which the petitioner executed and delivered its promissory note dated November 4, 1948, wherein it promised to pay to the order of the CCC on or before April 30, 1949, the principal amount of the loan together with interest thereon at the rate of 3 percent per annum.

The note was secured by a chattel mortgage dated November 4, 1948, which purported to create a lien upon the 123,576 bushels of barley covered by the warehouse receipt.

Similar notes and mortgages were executed by three other barley producers and the CCC relating to barley warehoused with Brietigam about the same time.

Subsequent to July 21, 1948, when petitioner delivered its barley to Brietigam for storage but prior to November 4, 1948, Brietigam commingled petitioner's barley with barley he had received for storage from the other producers, and during this period Brietigam removed and sold for his own account or otherwise appropriated to his own use, substantial amounts of barley from the commingled mass so formed. As a result of these appropriations, diversions, and sales by Brietigam, the total mass of the commingled barley in the Brietigam warehouse on November 4, 1948, was substantially less than the total amount that had been deposited with Brietigam by the petitioner and other producers in July and August 1948.

On or before December 17, 1948, Brietigam became insolvent, there was not then sufficient barley in his storage facilities to meet his outstanding warehouse receipts, and he announced the facts to his creditors and to those who had deposited barley with him. He ceased all warehouse business on that date and surrendered physical possession and control of all of his assets and the remaining grain in storage to a committee of his creditors. On March 8, 1949, Brietigam filed a voluntary petition for adjudication in bankruptcy and shortly thereafter he was adjudged bankrupt as of March 8, 1949. Thereafter the petitioner filed a creditor's claim in the amount of $153,234.24 in the bankruptcy proceedings.

The commingled mass of barley delivered by Brietigam to his creditors was thereafter sold by the receiver and trustee in bankruptcy of Brietigam, free and clear of all liens and claims, pursuant to a court order entered in the bankruptcy proceedings and agreement of the holders of Brietigam's warehouse receipts.

On or about February 2, 1949, the CCC made written demand upon the petitioner and the other producers to satisfy their promissory notes, but the petitioner and the other producers failed and refused either to make payment or to deliver to the CCC the barley purportedly covered by their chattel mortgages.

On or about July 29, 1949, the petitioner assigned to the CCC (a) all of its right, title, and interest in and to the Brietigam warehouse receipt and (b) any claims it might have against Brietigam with respect to barley covered by the warehouse receipt. On the same date the petitioner endorsed and delivered the warehouse receipt to the CCC. This assignment recited that it was made solely for the purpose of facilitating the handling of the respective claims of CCC and the petitioner and was not to constitute payment or satisfaction of the obligation of petitioner to the CCC by virtue of the promissory note heretofore described. Neither was the agreement of assignment to be deemed to be a waiver of any defense which the petitioner might have against any claim or suit by the CCC on the note to recover the loan value of barley converted prior to the date of the chattel mortgage.

On or about September 23, 1949, and thereafter, the United States of America filed various claims in the Brietigam bankruptcy case to which the trustee in bankruptcy filed objections. The United States also, on May 18, 1954, filed suit to recover from the petitioner and each of the other barley producers the amounts it had lent them through its agency, the CCC. In the litigation the United States claimed from the petitioner the full amount of the loan made by CCC to the petitioner.

A settlement agreement was worked out among the parties to the bankruptcy proceeding which was dated February 7, 1955. Pursuant to this agreement the trustee paid the United States on behalf of the petitioner the sum of $64,864.19 and the petitioner paid the United States, in addition, the sum of $32,444.73. In compliance with a further provision of the settlement agreement the United States dismissed with prejudice the litigation which had been brought against the petitioner and the other producers to collect the amounts of their notes to the CCC.

The cost to petitioner of the 123,576 bushels of barley referred to in Brietigam's warehouse receipt was $43,420.34. This amount was included in respect of the barley, as part of petitioner's harvested crop then on hand, in the closing inventory reported at the lower of

cost or market on petitioner's income tax return for the fiscal year 1948.

On its income tax return for the fiscal year 1949, petitioner took a loss deduction of $43,420.34 by showing no yearend inventory with respect to the 123,576 bushels of barley, and the petitioner explained the loss deduction in the following statement attached to its fiscal year 1949 return:

> Grain stored in unbonded storage, cost on 8/1/48 $43,420.34 lost through theft and sale by warehouseman. No recovery available, no insurance.

The loss deduction was not disturbed by respondent on an audit and examination of petitioner's fiscal year 1949 return, and petitioner realized a tax benefit therefrom to the full extent thereof.

The petitioner did not elect under the provisions of section 123 of the Internal Revenue Code of 1939 to consider as income for the fiscal year 1949 the amount of $153,234.24 it received as a loan from the CCC on November 12, 1948, nor did it include the amount of said CCC loan in its gross income for that fiscal year.

At all times from November 12, 1948, when it received the loan, until on or about March 3, 1955, the date of the payments described above, the petitioner carried the CCC loan as a loan on its books and records, and treated and reported it as a loan on its Federal income tax returns.

Petitioner did not report as income, or pay any income tax on, the $153,234.24 proceeds of the loan or any part thereof, for any of the fiscal years 1949 to 1954, inclusive.

The petitioner reported and claimed the following interest deductions on its returns for the following fiscal years in respect of the loan, none of which interest the petitioner has ever paid as interest:

| Return for fiscal year— | Interest deduction | Return for fiscal year— | Interest deduction |
|---|---|---|---|
| 1949 | $3,287.32 | 1952 | $4,597.02 |
| 1950 | 4,597.03 | 1953 | 4,597.02 |
| 1951 | 4,597.03 | 1954 | 4,597.02 |

The petitioner realized tax benefits from these interest deductions for each of the fiscal years 1949 to 1951, inclusive, to the full extent of each year's deduction.

The interest deductions reported by the petitioner on its returns for each of the fiscal years 1952 to 1954, inclusive, have been disallowed by the Commissioner.

No entry was made in petitioner's books and records at any time prior to March 3, 1955, nor was any statement made in any of petitioner's returns for any of the fiscal years 1949 to 1954, inclusive, indicating that petitioner might have realized income, or might later claim it realized income, at any time before March 3, 1955, in respect

of the $153,234.24 it received as a loan from the CCC on November 12, 1948.

The petitioner on its return for fiscal 1955 excluded from its gross income under section 108(a) of the Internal Revenue Code of 1954 the sum of $147,061.95 as income from the "discharge of indebtedness" and consented to an adjustment to the basis of the property in connection with which the indebtedness was incurred pursuant to section 1017 of the Internal Revenue Code of 1954. This amount was computed as follows:

| | |
|---|---:|
| Principal of petitioner's note dated Nov. 4, 1948, to the CCC | $153, 234. 24 |
| Add interest alleged by petitioner to be allowed or allowable in prior years, i.e., for the fiscal years 1949 to 1954, inclusive | 26, 272. 44 |
| | 179, 506. 68 |
| Less amount paid by the petitioner on or about March 3, 1955, to the United States of America pursuant to settlement agreement | 32, 444. 73 |
| Income realized by petitioner during the fiscal year 1955 except for the provisions of section 108(a) of the Internal Revenue Code of 1954 if said section applies to the present proceedings | 147, 061. 95 |

In determining the deficiency herein for fiscal 1955 the Commissioner among other adjustments increased petitioner's income by $133,270.89, with the following explanation:

It is held that as a result of such settlement with the Commodity Credit Corporation, you realized ordinary income attributable to the chattel mortgage and constructive sale of your barley calculated as follows:

| | |
|---|---:|
| Loan proceeds, 11/4/1948 | $153, 234. 24 |
| Less settlement repayment | 32, 444. 73 |
| Gain attributable to constructive sale of barley | $120, 789. 51 |
| Add interest accrued and deducted on your returns for fiscal years 1949, 1950, 1951 | 12, 481. 38 |
| Total gain realized | $133, 270. 89 |

ULTIMATE FINDING.

Petitioner realized ordinary income in the amount of $64,864.19 during its fiscal year 1955 on the payment during that year to the CCC of that amount by the trustee in bankruptcy on petitioner's behalf, for petitioner's benefit, and at petitioner's direction, which amount represented petitioner's then first-determined share of the proceeds from the sale of a commingled mass of barley contained in the Brietigam warehouse. In addition thereto, petitioner realized income during fiscal year 1955 in the amount of $68,406.70 from the discharge of an indebtedness owing by the petitioner to the CCC, which amount petitioner is entitled to exclude from income under the provisions of section 108(a) of the Internal Revenue Code of

1954 if that amount is applied, pursuant to the provisions of section 1017 of the Code, in reduction of the basis of property held by petitioner. The amount of $68,406.70 is computed as follows:

| | |
|---|---:|
| Borrowed by petitioner from the CCC, Nov. 4, 1948 | $153,234.24 |
| Less amount paid to CCC by trustee in bankruptcy of H. S. Brietigam for and on behalf of petitioner | 64,864.19 |
| | 88,370.05 |
| Add interest accrued and deducted on petitioner's returns for fiscal years 1949 to 1951, inclusive | 12,481.38 |
| Petitioner's total indebtedness to the CCC immediately preceding petitioner's payment to the CCC of $32,444.73, plus interest taken as a deduction | 100,851.43 |
| Less amount paid by petitioner to the CCC in discharge of petitioner's then indebtedness to the CCC | 32,444.73 |
| Income to petitioner from the discharge of petitioner's then indebtedness to the CCC | 68,406.70 |

The parties have presented several possible solutions to the problem before us. The petitioner's main contention is that if it received taxable income at all, the income was received in some previous year, maybe 1948 or 1949 or 1953, not here involved, and that it is not taxable on such income in 1955. In so doing, the petitioner departs from the position which it took in its return for 1955, which, of course, it is privileged to do. *Deman Tire & Rubber Co.*, 14 T.C. 706, affd. 192 F. 2d 261 (C.A. 6).

The Commissioner's position is that the petitioner sold its barley in 1955 and that the amount it was entitled to receive as a matter of right for the sale was finally fixed by the events which occurred in that year. Hence the amount so determined was taxable as ordinary income in that year. Alternatively, the Commissioner argues that the entire gain realized by the petitioner under the March 3, 1955, settlement constituted either gross income derived from its business or income derived from dealing in property.

On the other hand, the Commissioner recognizes the possibility that the income which the petitioner realized in 1955 was realized partly from the discharge of its note to the CCC and partly as the result of the payment by the trustee in bankruptcy on petitioner's behalf for application on its obligation to the CCC.

We think the latter possible resolution of the problem is the correct one. The mechanics of this resolution is set forth in our Ultimate Finding above.

For the sake of clarity we recapitulate the facts. In November of 1948 the petitioner borrowed $153,234.24 from the CCC and gave its note therefor secured by a chattel mortgage on 123,576 bushels of

barley which it had grown for sale. The barley had been warehoused and it was discovered shortly after the note and mortgage had been given that the warehouseman had converted substantial amounts of the grain to his own use, both before and after the loan and mortgage. When the CCC learned that petitioner did not at the time of the loan own the quantity of grain recited in the mortgage, the CCC made written demand on petitioner to repay the loan or deliver the grain, but petitioner failed and refused to do so. Thereafter the United States filed suit against petitioner to recover the loan plus interest thereon. After the demand but before the suit was filed the warehouseman went through bankruptcy. The CCC claim against petitioner was settled during petitioner's fiscal year ended July 31, 1955, under a settlement agreement which provided, *inter alia*, that the trustee in bankruptcy would pay $64,864.19 and the petitioner, $32,444.73 to the United States in respect of petitioner's loan. These payments were made on March 3, 1955, whereupon the suit of the United States against petitioner was dismissed with prejudice. This, in our view, resulted in the cancellation of the balance due on the note and mortgage.

Petitioner had not elected under section 123(a) of the Internal Revenue Code of 1939 to report the loan proceeds as income when received in its fiscal year ended July 31, 1949; it did not report the loan proceeds as income for any subsequent year; and at all times from the date of the loan until the date of the settlement it carried the loan as such on its books and records and reported it as such on its returns. It accrued interest on the loan and deducted such interest on its returns for the fiscal years 1949 to 1954, inclusive, but such interest was never paid. Petitioner, by an inventory writeoff on its return for the fiscal year 1949, thereby recovered in full its cost of producing the barley in that year.

On these facts we think it is clear that petitioner received taxable income in 1955. Petitioner patently obligated itself on its note to the CCC in 1948 and though petitioner argues it had no "personal" liability on the note because of certain recitations contained in the mortgage, the United States Government on its own behalf and that of the CCC contested this denial of liability. See *Old Colony Trust Associates* v. *Hassett*, 150 F. 2d 179, where it was said: "Further, advances may be loans even when there is an absence of personal liability and the lender can look only to the pledged securities for repayment." This contested liability was finally resolved in the settlement agreement reached during fiscal 1955. Thus in fiscal 1955 "all events" occurred which finally determined the amount the petitioner was to receive for its barley and the computation set out in our finding properly reflects the income which the petitioner is bound to

accrue in 1955. *United States* v. *Consolidated Edison Co. of N.Y.*, 366 U.S. 380. In our view, part of the income (as shown in our finding) resulted from the cash payment made by the trustee in bankruptcy to the Government on petitioner's behalf and is properly to be treated as income of the petitioner. *Douglas* v. *Willcuts*, 291 U.S. 1. In addition, the petitioner received further income resulting from the cancellation and satisfaction of the contested balance of its indebtedness on the CCC note and mortgage. *Estate of W. R. Whitthorne*, 44 B.T.A. 1234.

As the Commissioner recognizes on brief the "petitioner is as a matter of law entitled to exclude from income whichever of said amounts it realized as such [as cancellation of indebtedness] during its taxable year 1955 *only* if the excluded amount is applied in reduction of the basis of petitioner's property. Sections 108(a) and 1017, Internal Revenue Code of 1954." Otherwise, the amount will have to be treated as ordinary income in the Rule 50 computation.

*Decision will be entered under Rule 50.*