JAQUELIN E. TAYLOR AND HELEN M. TAYLOR, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5633–74.   Filed March 31, 1977.

*Collins Denny III* and *Harold E. Starke, Jr.,* for the
petitioners.
*Robert A. Johnson,* for the respondent.

OPINION

STERRETT, *Judge:* Respondent determined deficiencies in
petitioners' Federal income taxes for the calendar years 1970
and 1971 in the amounts of $7,434.60 and $7,438.35, respec-
tively. The issue for decision is whether petitioners, due to
their failure to file a statement of election with their
returns, are deprived of the benefits of section 1251(b)(4),
I.R.C. 1954.

All of the facts have been stipulated and are so found. The
stipulation of facts, together with the exhibits attached
thereto, are incorporated herein by this reference.

Petitioners Jaquelin E. Taylor and Helen M. Taylor,
husband and wife, resided in Richmond, Va., at the time they
filed their petition herein. Petitioners timely filed joint
Federal income tax returns for the calendar years 1970 and
1971 with the Internal Revenue Service. They also filed an
amended return for 1970 with the District Director of Internal
Revenue, Richmond, Va., on December 22, 1971.

Petitioner Jaquelin E. Taylor has for a number of years
maintained an operating dairy and beef cattle farm in Orange
County, Va. During 1970 and 1971 petitioners computed their
farm income on the accrual method of accounting, including
the use of inventories. They charged to the capital account all
expenditures paid or incurred which were properly chargea-
ble thereto (including any expenditures which petitioners
were, under the Code or regulations, entitled to treat or elect
to treat as noncapital expenditures). This practice is consist-

ent with the accounting requirements set forth in section 1251(b)(4).

During 1970 and 1971 petitioners sold livestock described in section 1231(b)(3). On their returns for those years petitioners reported the gain recognized from such sales as long-term capital gain. Respondent determined that such gain was ordinary income pursuant to section 1251. Although petitioners did not succeed to an excess deductions account described in section 1251, section 1251 is applicable to the sales of livestock involved herein unless petitioners fall within the ambit of section 1251(b)(4).

Neither petitioners' 1970 or 1971 joint individual income tax returns contained a statement indicating that they had made an election under section 1251(b)(4) and setting forth information identifying the election as required by temporary regulation section 13.0.

At the time they filed their 1970 return, petitioners, their lawyer, and the accountant who reviewed the return were aware of section 1251. However, prior to March 20, 1975, when advised by respondent's agent, they had no actual knowledge of the manner in which an election under section 1251(b)(4)(B) was to be made. In filing their 1970 return petitioners did not believe they were subject to section 1251. Rather, they believed that their compliance with the accounting methods prescribed by section 1251(b)(4)(A) and their reporting the gain from the sale of farm recapture property as long-term capital gain constituted an effective election under section 1251(b)(4).

Temporary regulation section 13.0 was published in the Federal Register on March 11, 1970, and was subsequently published in the Internal Revenue Cumulative Bulletin. The only other written materials relating to section 1251(b)(4) election that were published, released, or disseminated by the Treasury Department are as follows:

(1) Farmer's Tax Guide, 1971 Edition (Pub. 225)

(2) Farmer's Tax Guide, 1972 Edition (Pub. 225)

(3) 1971 Schedule D to Form 1040

(4) 1971 Form 4797 (Supplemental Schedule of Gains and Losses)

(5) 1970 Instructions to Form 1040

(6) 1971 Instructions to Form 1040

(7) 1971 Instructions to Form 4797

None of the foregoing makes reference to the election provided for in section 1251(b)(4)(A). However, with respect to the application of section 1251 the following comments are advanced:

(1) The 1970 instructions for Form 1040 provide in pertinent part:

Gain from Disposition of
Sections 1251 and 1252 property

Section 1251, Gain From Disposition of Certain Property Held More Than Six Months Used in Farming Where Farm Losses Offset Nonfarm Income.—For any taxable year beginning after December 31, 1969, refer to section 1251 to determine if there is an element of ordinary income in farm recapture property if (1) nonfarm adjusted gross income exceeds $50,000 * * *, (2) there is a farm net loss exceeding $25,000 * * * which has been determined by use of an accounting method that does not recognize the use of inventories and the charging of expenditures properly chargeable to a capital account, and (3) there is a disposition of farm recapture property, described in section 1251(e)(1).

Gain from the disposition of certain farm property that is both section 1251 and section 1245 property must first be entered in Part V. Before any of the gain from such property from Part V can be considered for purposes of section 1231 (Part VII), the gain must first be subject to the ordinary income rules applicable to farm recapture property under section 1251. Attach a statement showing the computation (including the excess deductions account) of gains on dispositions of certain farm property subject to the provisions of section 1251. Enter portion of the total gain which is deemed ordinary income in Part III, and the remaining gain in Part VII.

(2) The 1971 instructions to Form 4797 provide in pertinent part:

Section 1251, Gain from Disposition of Certain Property Held More Than Six Months Used in Farming Where Farm Losses Offset Nonfarm Income.—Refer to section 1251 to determine if there is an element of ordinary income attributable to farm recapture property described in section 1251(e)(1). In general, if there is no excess deductions account by reason of a carryover into the current year or by reason of succeeding to a transfer of such an account, section 1251 will not apply, if there is a farm net loss which has been determined by use of an accounting method that recognizes the use of inventories and the charging of expenditures properly chargeable to a capital account. In addition to the rule in the preceding sentence and assuming there is no excess deductions account by reason of a carryover into the current year or by reason of succeeding to a transfer of such an account, an individual or estate and in certain cases an electing small business corporation may ignore section 1251 if: (a) nonfarm adjusted

gross income is $50,000 or less * * * or (b) there is a farm net loss of $25,000 or less * * *

* * *

The excess deductions account is a component in section 1251 which limits the amount of gain to be recaptured as ordinary income. Determine the excess deductions account and apply it on line 18(c) to the section 1251 farm recapture property in accordance with section 1251.

(3) The Farmer's Tax Guide 1971 Edition in pertinent part provides:

RECAPTURE OF FARM LOSSES OFFSET AGAINST NONFARM INCOME. If you have a farm net loss of more than $25,000, your nonfarm adjusted gross income is more than $50,000, and you report your income on the cash method, part of the gain on the sale or other disposition of certain property used in farming will be treated as ordinary income.

You must establish and maintain an "excess deductions account" if you meet all 3 of the above conditions. This account serves as a measure of the amount of gain arising on the disposition of property used in farming that you must treat as ordinary income. Gain on the disposition of certain property is treated as ordinary income to the extent of the balance of the "excess deductions account."

(4) The Farmer's Tax Guide 1972 Edition in pertinent part provides:

RECAPTURE OF FARM LOSSES OFFSET AGAINST NONFARM INCOME (SECTION 1251). If you have a farm net loss of more than $25,000 your nonfarm adjusted gross income is more than $50,000, and you report your income on the cash method, part of the gain on the sale or other disposition of certain property used in farming will be treated as ordinary income.

You must establish and maintain an "excess deductions account" if you meet all 3 of the above conditions. This account serves as a measure of the amount of gain arising on the disposition of property used in farming that you must treat as ordinary income. Gain on the disposition of certain property is treated as ordinary income to the extent of the balance of the "excess deductions account."

Petitioners provided all available information to respondent's agents in attempting to demonstrate that they had made an election under section 1251(b)(4), and have offered to amend their returns in any way deemed necessary by respondent to comply with his interpretation of the election requirements of that section.

Section 1251,[1] in general, provides that if farm recapture property is disposed of, the gain realized shall be treated as

---

[1] SEC. 1251. GAIN FROM DISPOSITION OF PROPERTY USED IN FARMING WHERE FARM LOSSES OFFSET NONFARM INCOME.

(b) EXCESS DEDUCTIONS ACCOUNT.—

ordinary income to the extent of the amount contained in the taxpayer's excess deductions account. However, section 1251(b)(4) sets forth an exception to the general rule and provides in pertinent part:

(4) EXCEPTION FOR TAXPAYERS USING CERTAIN ACCOUNTING METHODS.—
(A) GENERAL RULE.—Except to the extent that the taxpayer has succeeded to an excess deductions account as provided in paragraph (5), additions to the excess deductions account shall not be required by a taxpayer who elects to compute taxable income from farming (i) by using inventories, and (ii) by charging to capital account all expenditures paid or incurred which are properly chargeable to capital account (including such expenditures which the taxpayer may, under this chapter or regulations prescribed thereunder, otherwise treat or elect to treat as expenditures which are not chargeable to capital account).
(B) TIME, MANNER, AND EFFECT OF ELECTION.—An election under subparagraph (A) for any taxable year shall be filed within the time prescribed by law (including extensions thereof) for filing the return for such taxable year, and shall be made and filed in such manner as the Secretary or his delegate shall prescribe by regulations. Such election shall be binding on the taxpayer for such taxable year and for all subsequent taxable years and may not be revoked except with the consent of the Secretary or his delegate.

The parties agree that unless the exception is applicable section 1251 governs the treatment of the gain realized from

---

(1) REQUIREMENT.—Each taxpayer subject to this section shall, for purposes of this section, establish and maintain an excess deductions account.
\* \* \*
(c) ORDINARY INCOME.—
(1) GENERAL RULE.—Except as otherwise provided in this section, if farm recapture property (as defined in subsection (e)(1)) is disposed of during a taxable year beginning after December 31, 1969, the amount by which \* \* \*
\* \* \*
(2) LIMITATION.—
(A) AMOUNT IN EXCESS DEDUCTIONS ACCOUNT.—The aggregate of the amounts treated under paragraph (1) as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231 for any taxable year shall not exceed the amount in the excess deductions account at the close of the taxable year after applying subsection (b)(3)(A).
\* \* \*
(e) DEFINITIONS.—For purposes of this section—
(1) FARM RECAPTURE PROPERTY.—The term "farm recapture property" means—
(A) any property (other than section 1250 property) described in paragraph (1) (relating to business property held for more than 6 months), (3) (relating to livestock), or (4) (relating to an unharvested crop) of section 1231(b) which is or has been used in the trade or business of farming by the taxpayer or by a transferor in a transaction described in subsection (b)(5), and
(B) any property the basis of which in the hands of the taxpayer is determined with reference to the adjusted basis of property which was farm recapture property in the hands of the taxpayer within the meaning of subparagraph (A).

the disposition of livestock during the years at issue. The parties further agree that petitioners have satisfied the requirements of subparagraph (A). Hence the sole issue for decision is whether petitioners have made an effective election to have conferred upon them the benefits of section 1251(b)(4) for the years 1970 and 1971.

Section 1251(b)(4)(B) and the regulations in effect for 1970 and 1971[2] set forth the time and manner in which an election is to be made. Insofar as this case is concerned, the election, which is to be made within the time prescribed by law for filing a return, is by regulation to be effectuated by attaching to the return a statement "indicating the section under which the election is being made," "setting forth information to identify the election," and identifying the period for which it applies. Respondent's position is that petitioners have failed

---

[2] Temporary regulation sec. 13.0(b):

(b) *Manner of making election or serving notice*—(1) *In general.* (i) Except as provided in subparagraph (2) of this paragraph, a taxpayer may make an election under any section referred to in paragraph (a)(1) or (2) of this section for the first taxable year for which the election is required to be made or for the taxable year selected by the taxpayer when the choice of a taxable year is optional. The election must be made not later than (a) the time, including extensions thereof, prescribed by law for filing the income tax return for such taxable year or (b) 90 days after the date [Mar. 10, 1970] on which these regulations are filed with the Federal Register, whichever is later.

(ii) The election shall be made by a statement attached to the return (or an amended return) for the taxable year, indicating the section under which the election is being made and setting forth information to identify the election, the period for which it applies, and the facility, property, or amounts to which it applies.

(c) *Effect of election*—(1) *Revocations*—(i) *Consent to revoke required.* Except as provided in subdivision (ii) of this subparagraph, an election made in accordance with paragraph (b)(1) of this section shall be binding unless consent to revoke the election is obtained from the Commissioner. An application for consent to revoke the election will not be accepted before the promulgation of the permanent regulations relating to the section of the Code or Act under which the election is made. Such regulations will provide a reasonable period of time within which taxpayers will be permitted to apply for consent to revoke the election.

(ii) *Revocation without consent.* An election made in accordance with paragraph (b)(1) of this section may be revoked without the consent of the Commissioner not later than 90 days after the permanent regulations relating to the section of the Code or Act under which the election is made are filed with the Federal Register, provided such regulations grant taxpayers blanket permission to revoke that election within such time without the consent of the Commissioner. Such blanket permission to revoke an election will be provided by the permanent regulations in the event of a determination by the Secretary or his delegate that such regulations contain provisions that may not reasonably have been anticipated by taxpayers at the time of making such election.

to comply with these requirements which he claims are both valid and indispensable to the smooth administration of the revenue laws. Further, respondent argues that petitioners are not entitled as a matter of right to file an amended return containing the required election subsequent to the due date for the return. Hence he concludes that petitioners have not satisfied the requirement of section 1251(b)(4)(B) and are not excepted from the general rule of section 1251.

Petitioners' arguments comprise a multifaceted attack upon respondent's determination including the contention that they did not have adequate notice of the provision at issue, that the result obtained by respondent contravenes the statutory scheme, and that petitioners substantially complied with the governing statute and did in fact make an effective election thereunder.

First, we agree with respondent that the regulations are valid. In addition to the authority granted under section 7805 to prescribe all needful regulations, respondent is specifically mandated by section 1251(b)(4)(B) to prescribe the manner in which a section 1251(b)(4) election is to be made. Unless plainly inconsistent with the governing statute they must be sustained. *Bingler v. Johnson,* 394 U.S. 741 (1969). Clearly such is not the case with respect to the regulation at issue. Such regulation is both valid and relevant to the disposition of the instant case.

Second, we agree with respondent that as a general proposition, a taxpayer does not have an absolute right to file an amended return. See *Jack R. Goldstone,* 65 T.C. 113 (1975). Nevertheless, we hold for petitioners on the ground that in filing their original returns they substantially complied with the requirements of section 1251(b)(4) and therefore made an effective election thereunder on timely returns.

The test for determining the applicability of the substantial compliance doctrine has been the subject of a myriad of cases. The critical question to be answered is whether the requirements relate "to the substance or essence of the statute." *Fred J. Sperapani,* 42 T.C. 308, 331 (1964). If so, strict adherence to all statutory and regulatory requirements is a precondition to an effective election. *Lee R. Dunavant,* 63 T.C. 316 (1974). On the other hand, if the requirements are procedural or directory in that they are not of the essence of the thing to be

done but are given with a view to the orderly conduct of business, they may be fulfilled by substantial, if not strict, compliance. See *Lee R. Dunavant, supra; Georgie S. Cary,* 41 T.C. 214 (1963); *Columbia Iron & Metal Co.,* 61 T.C. 5 (1973). Thus our decision must rest upon an analysis of the purpose of section 1251 and the exception contained therein to determine whether the disputed requirements are mandatory or directory.

Section 1251, enacted as part of the Tax Reform Act of 1969, was designed to prevent taxpayers from utilizing certain farm losses to convert ordinary income into capital gains. As a consequence of special accounting rules for farmers, in particular, relief from the use of inventories and the current deduction of capital expenditures, taxpayers with substantial nonfarm income carrying on limited farming activities obtained ordinary loss deductions from the farming activities. These losses arose or were enlarged due to the aforenoted accounting methods. Further on the sale of the farm property (not held primarily for sale) capital gains treatment was available. To correct this abuse section 1251 provided the mechanism by which a portion of the previously deducted farm losses resulted in the treatment of the gain from the disposition of certain farm property as ordinary income rather than capital gain. H. Rept. No. 91–413 (1969), 1969–3 C.B. 200, 240; S. Rept. No. 91–552 (1969), 1969–3 C.B. 423, 484.

Congress recognized that the abuses curtailed by section 1251 did not exist in the case of farmers who utilized the accrual method of accounting including inventories, and who capitalized all costs attributable to property used in the trade or business with a useful life in excess of 1 year. Hence it enacted section 1251(b)(4) to provide an exception for such farmers from the ambit of the recapture rules of section 1251. H. Rept. No. 91–413, *supra,* 1969–3 C.B. at 242, 243; S. Rept. No. 91–552, *supra,* 1969–3 C.B. at 486.

To our mind, the *essence* of section 1251(b)(4) is to allow a farmer capital gains treatment on the sale or other disposition of farm recapture property if the farmer utilizes the method of accounting that cannot produce the evil section 1251 was enacted to prevent. In other words, what is essential with respect to section 1251(b)(4) is that petitioners compute taxable income from farming by using inventories and by

charging to the capital account all expenditures paid or incurred which are properly chargeable to the capital account. The election requirements, although undoubtedly helpful in the processing and auditing of returns, are in our view merely directory. We hold that petitioners, having fulfilled the essential requirements of section 1251(b)(4), have effectively made an election under that section on their original returns for the years at issue.[3]

In this connection respondent asserts that he was unable to ascertain from the four corners of petitioners' returns whether or not they had satisfied the aforenoted accounting requirements. In particular he points to a deduction for general expenses appearing on the returns. The fact of the matter is that respondent would have been in no better position to make such determination had petitioners filed the election exactly as respondent desired. Under those regulations petitioners would merely have to state they were making an election under section 1251 for the year for which the return was filed. First, such a statement would not remedy the deficiency of which respondent complains. Moreover, we fail to see how such a statement would aid respondent in any material respect in light of the fact that upon audit respondent would in any event inquire into the veracity of any data contained on petitioners' returns. See *Fred J. Sperapani, supra* at 331.

Respondent has cited for our consideration and we have found numerous cases in which courts have sustained his rejection of an untimely election. We find these cases to be distinguishable from the instant case. In each one the following set of circumstances prevailed:

(1) The original action or failure to act was inconsistent with the position the taxpayer ultimately chose to elect. *National Western Life Insurance Co.,* 54 T.C. 33 (1970); *Jack R. Goldstone, supra;*

---

[3] It cannot be gainsaid that ignorance of the provisions involved is not a valid basis upon which to excuse a failure to make an effective timely election. *Riley Co. v. Commissioner,* 311 U.S. 55 (1940). Thus, while not material to our decision we cannot help but note that 1970 was the first effective year for sec. 1251 and that various Government instructions and forms might lead one to believe that sec. 1251 was inapplicable to an accrual basis taxpayer.

(2) The allowance of an untimely election would permit the taxpayer the use of hindsight to play both ends against the middle. *Estate of George Stamos,* 55 T.C. 468 (1970);

(3) Respondent would be prejudiced were an untimely election permitted. *Pacific National Co. v. Welch,* 304 U.S. 191 (1938);

(4) The applicable statute or regulation provided with detailed specificity the manner in which an election was to be made. *Camiel Thorrez,* 31 T.C. 655 (1958), affd. 272 F.2d 945 (6th Cir. 1959);

(5) The required action related to the substance of the statutory scheme. *Posey v. United States,* 449 F.2d 228 (5th Cir. 1971); *Lee R. Dunavant, supra; Lambert v. Commissioner,* 338 F.2d 4 (2d Cir. 1964), affg. T.C. Memo. 1963–296; and

(6) The untimely election would affect the taxpayer's tax liability for another year. *Denman Tire & Rubber Co.,* 14 T.C. 706 (1950), affd. 192 F.2d 261 (6th Cir. 1951).

We find none of the foregoing factors to be present in the instant case. As noted previously respondent is not in any manner prejudiced by petitioners' actions which taken as a whole have been entirely consistent. Petitioners have always thought themselves to be excepted from section 1251 and have proceeded accordingly. Further, respondent's regulations do not specify any particular form by which an election is to be made. See *Alfred N. Hoffman,* 47 T.C. 218 (1966), affd. per curiam 391 F.2d 930 (5th Cir. 1968). Petitioners on their return provided information sufficient to indicate compliance with section 1251(b)(4)(A) and the required attached statement would have added nothing to respondent's knowledge.

Moreover, petitioners have had no opportunity to avail themselves of hindsight to obtain an unwarranted advantage. Having chosen to utilize the statutory method of accounting, they had nothing to lose and everything to gain from making an election at the outset. Hindsight simply would be of no benefit to petitioners in this instance.

Finally petitioners' election has no effect on the computation of their tax liability for other years. Admittedly the election is binding for subsequent years. However the net result of such election is merely to tax the gain from dispositions at capital gains rather than ordinary income rates. See *Albert L. Dougherty,* 60 T.C. 917, 940 (1973).

All in all we do not believe that this was a useful case, from a tax administration point of view, for the respondent to have initiated.

*Decision will be entered for the petitioners.*