DAVID K. STRAIGHT, Petitoner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Straight v. Comm'r
Docket No. 23658-94 United States Tax Court
1999 Tax Ct. Memo LEXIS 488; May 6, 1999, Filed Straight v. Commissioner, T.C. Memo 1997-569, 1997 Tax Ct. Memo LEXIS 655 (T.C., 1997)
Petitioner's motion for reconsideration granted in part and denied in part. Eagle's sales agreements were not for sale of goods in future tax year except for those agreements signed in last 87 days of its 1990, 1991, and 1992 tax years. Sanction previously imposed on respondent was not modified. *488 John O. Colvin, Judge John O. Colvin
ORDER
This case is before the Court on petitioner's motion for reconsideration of our opinion in Straight v. Commissoner, T.C. Memo. 1997-569, 1997 Tax Ct. Memo LEXIS 655. Respondent filed an objection to petitioner's motion. Neither party requested a hearing and we conclude that none is necessary to decide petitioner's motion. We grant in part and deny in part petitioner's motion, as described below.
Reconsideration under Rule 161[1] serves the limited purpose of correcting manifest errors of fact or law, or allowing newly discovered evidence to be introduced that could not have been introduced before the filing of an opinion, even if the moving party had exercised due diligence. Westbrook v. Commissioner, 68 F.3d 868, 879-880 (5th Cir. 1995), affg. per curiam T.C. Memo 1993-634. The Court will not grant a motion to reconsider unless the party seeking reconsideration shoes unusual circumstances of substantial error. Alexander v. Commissioner, 95 T.C. 467, 469 (1990), affd. sub nom. Stell v. Commissioner, 999 F.2d 544 (9th Cir. 1993); Estate of Halas, 94 T.C. 570, 574 (1990); *489 Vaughn v. Commissioner, 87 T.C. 164, 166-167 )1986); CWT Farms, Inc. v. Commissioner, 79 T.C. 1054, 1057 (1982), affd. 755 F.2d 790 (11th Cir. 1985); Haft Trust v. Commissioner, 62 T.C. 145, 147 (1974), affd. on this issue 510 F.2d 43, 45 n.1 (1st Cir. 1975).
A. Background
In Straight v. Commissioner, supra, we held that Eagle, petitioner's wholly owned S Corporation, (1) could not defer under section 1.451-5(a)(1)(i), Income Tax Regs., reporting customer deposits it received for the sale of panelized house kits because Eagle did not hold the house kits primarily for sale to customers in the ordinary course of business, T.C. Memo 1997-569,; 1997 Tax Ct. Memo LEXIS 655, *31, and (2) did not qualify under section 1.451-5(a)(1)(ii), Income Tax Regs. *490 , because it did not build, construct, install, or manufacture the house kits, T.C. Memo 1997-569, 1997 Tax Ct. Memo LEXIS 655, *33 (the accounting issue). We also imposed a $ 5,000 penalty on respondent as a sanction for the alteration of the 30-day letter by respondent's revenue agent (the sanctions issue). T.C. Memo 1997-569, 1997 Tax Ct. Memo LEXIS 655, *36. Petitioner's motion requests reconsideration of both the accounting and sanctions issues.
B. Accounting Issue
1. Whether Eagle Held House Kits Primarily for Sale to Customers
Petitioner asks us to reconsider out holding that Eagle did not hold house kits primarily for sale to customers during the years in issue. Petitioner contends that we erroneously held that Eagle did not hold the house kits primarily for sale to customers in the ordinary course of business. Straight v. Commissioner, T.C. Memo 1997-569, 1997 Tax Ct. Memo LEXIS 655, *31. Respondent did not respond to the new arguments petitioner made on this point in the motion to reconsider. We may treat a party's failure to respond to an argument as a concession. Burbage v. Commissioner, 82 T.C. 546, 547 n.2 (1984). affd. 774 F.2d 644(4th Cir. 1985). We deem respondent's silence on this issue to be respondent's concession that Eagle *491 held the house kits primarily for sale to customers in the ordinary course of business. We also find petitioner's new arguments on this point to be convincing, Accordingly, we grant petitioner's motion on this point.
As a result of respondent's deemed concession, we must decide two issues which we did not reach in Straight v. Commissioner, supra: (1) whether Eagle substantially complied with the requirement in section 1.451-5(d), *492 Income Tax Regs., that it provide certain information in its tax return for the year at issue, and (2) whether (or to what extent) Eagle's agreements were for the sale of goods in a future tax year. If we decide both issues for petitioner, petitioner will qualify to at least some extent for relief under section 1.451-5, Income Tax Regs.
2. Whether Eagle Substantially Complied With the Requirement That It Attach an Information Schedule to Its Tax Returns
We next decide whether Eagle complied (or substantially complied) with section 1.451-5(d), Income Tax Regs., which provides that taxpayers shall attach an information schedule to their returns. Straight v. Commissioner, T.C. Memo 1997-569, 1997 Tax Ct. Memo LEXIS 655, *31. We did not need to reach this issue in Straight. See T.C. Memo 1997-569, 1997 Tax Ct. Memo LEXIS 655, *30 n.8.
Section 1.451-5(d), Income Tax Regs., states that a taxpayer must attach an information schedule to its income tax return showing (a) the total amount of advance payments it received in the taxable year. (b) the total amount of advance payments received in earlier years which have not been included in income before this year, and (c) the total amount of earlier years' payments included in current income. Petitioner concedes that Eagle did not attach an information schedule to its returns for the years in issue. However, petitioner contends that Eagle substantially complied with section 1.451-5(d), Income Tax Regs., and that substantial compliance is sufficient.
Less-than-strict compliance with procedural regulatory requirements may suffice if the taxpayer substantially complied with the essential statutory purpose, See, e.g., American Air Filter Co. v. Commissioner,81 T.C. 709, 719-729 (1983); Tipps v. Commissioner,74 T.C. 458, 468 (1980); Taylor v. Commissioner, 67 T.C. 1071, 1077-1078 (1977); Hewlett-Packard Co. v. Commissioner, 67 T.C. 736, 748-749 (1977); *493 Columbia Iron & Metal Co. v. Commissioner, 61 T.C. 5 (1973); Sperapani v. Commissioner,42 T.C. 308, 330-333 (1964). However, substantial compliance does not suffice if the taxpayer did not comply with the essential requirements of the governing statute. Prussner v. United States, 896 F.2d 218, 224 (7th Cir. 1990); Young v. Commissioner, 83 T.C. 831, 838 (1984), affd. 783 F.2d 1201 (5th Cir. 1986); see also Tipps v. Commissioner, supra at 468; Penn-Dixie Steel Corp. v. Commissioner, 69 T.C. 837, 846 (1978); Rockwell Inn, Ltd. v. Commissioner, T.C. Memo 1993-158.
We have examined several factors in deciding whether to permit less-than-strict compliance with regulatory requirements: (a) Whether the taxpayer's failure to comply fully defeats the purpose of the stature; (b) whether the taxpayer is trying to benefit from hindsight by adopting a position inconsistent with his original position; (c) whether the Commissioner is prejudiced by the omission of the required material; (d) whether the sanction imposed on the taxpayer for the failure is excessive *494 and out of proportion to the default and (e) whether the regulation specifically stated how the taxpayer was to comply. American Air Filter Co. v. Commissioner, supra; Columbia Iron & Metal Co. v. Commissioner, supra; Valdes v. Commissioner, 60 T.C. 910, 913 (1973); Denman Tire & Rubber Co. v. Commissionre, 14 T.C. 706 (1950); affd. 192 F.2d 261 (6th Cir. 1951). We next apply those factors to decide whether Eagle substantially complied with section 1.451-5(d), Income Tax Regs.
a. Whether Eagle's Failure To Attach Information Schedule to Its Returns Defeats the Purpose of Section 1.451-5(d), Income Tax Regs.
The accounting method petitioner seeks to adopt is created by a regulatory relief provision (section 1.451-5, Income Tax Reg.). Thus, we consider whether Eagle's failure to attach information schedules to its returns for the years in issue defeats the purpose of section 1.451-5(d), Income Tax Regs.
The essential purpose of section 1.451-5(d), Income Tax Regs., is to notify *495 the Commissioner that the taxpayer is not currently reporting all of its advance payments in income. On each return for the years in issue, Eagle: (a) reported as a liability the amount of its customer deposits at the beginning and end of the year; (b) reported as income the amount of deposits forfeited (i.e., unapplied customer deposits that Eagle included in income during the tax year) during the year; (c) reported that it used the accrual method of accounting; and (d) reported that it used the same method of accounting for book and tax purposes, with a few identified exceptions. Thus, Eagle clearly showed that is deferred reporting in income some customer deposits until it treated the deposit as forfeited. This satisfied the essential purpose of the regulation.
Respondent argues that the references to customer deposits in Eagle's returns do not satisfy the requirement that the return disclose that a particular method of accounting has been adopted, citing Knight-Ridder Newspapers v. United States, 743 F.2d 781, 795 (11th Cir. 1984) (one goal of election regulations is that the Commissioner know that an election has been made. We distinguish Knight-Ridder Newspapers v. United States, supra, *496 because it involved a statutory election, the essential purpose of which was to inform the Commissioner that an election had been made and which asset classes it affected. Here, there is no statutory election requirement and section 1.451-5, Income Tax Regs., does not require the taxpayer to elect to defer advance payments. We believe that Eagle's tax returns for the years at issue satisfied the essential purpose of the regulation because they clearly showed that Eagle was not currently reporting all of its deposits in income. This factor favors petitioner.
b. Whether Eagle Is Adopting an Inconsistent Position With Its Returns
Eagle is not attempting to benefit from hindsight by adopting a position that is inconsistent with its tax returns for the years in issue. American Air Filter Co., v. Commissioner, supra, at 721; Dougherty v. Commissioner, 60 T.C. 917 (1973), supp. opinion 61 T.C. 719 (1974); National Western Life Insurance Co. v. Commissioner, 54 T.C. 33 (1970); Eagle's treatment of its customer deposits as advance payments on its 1990, 1991, and 1992 returns was entirely consistent *497 with the deferral method of accounting under section 1.451-5, Income Tax Regs. This factor favors petitioner.
c. Whether the Commissioner Is Prejudiced by Eagle's Failure To Attach Information Schedules
Petitioner's returns showed that Eagle was deferring reporting some customer deposits. Even if petitioner had fully complied the information schedule required by section 1.451-5(d), Income Tax Regs., would have shown whether Eagle qualified under section 1.451-5, Income Tax Regs. Thus, respondent was not prejudiced by Eagle's failure to attach an information schedule to its returns for 1990, 1991, and 1992. This factor favors petitioner.
d. Whether the Sanction for Failure to Comply Is Disproportionate to the Omission
Prohibiting Eagle from deferring reporting some of its customer deposits because Eagle did not attach an information schedule to its returns as required by section 1.451-5(d), Income Tax Regs., would be a sanction that is disproportionate to the omission. See Columbia Iron & Metal Co. v. Commssioner, supra at 10. This factor favors petitioner.
e. *498 Whether Section 1.451-5(d), Income Tax Regs., Stated How the Taxpayers Is To Comply
Section 1.451-5(d), Income Tax Regs., clearly states the information schedule requirement. Petitioner concedes that Eagle did not attach an information schedule to its returns for the years in issue.
This factor favors respondent; however, all of the other factors favor petitioner. We conclude that Eagle substantially complied with section 1.451-5(d), Income Tax Regs. We must now decide whether Eagle's agreements were for the sale of goods in a future tax year.
3. Whether Eagle's Agreements Were for the Sale of Goods in a Future Tax Year
Petitioner argues that Eagle's purchase agreements were for the sale of goods in a future taxable year as required by section 1.451-5(a)(1), Income Tax Regs. Respondent argues that Eagle does not qualify under section 1.451-5(a)(1)(i), Income Tax Regs., because the purchase agreements were for the sale of a house package within 60 days, unless extended by the payment of a back deposit, and were not for the sale of goods in a future taxable year. We did *499 not need to reach this issue in Straight v. Commissioner, supra. See T.C. Memo 1997-569, 1997 Tax Ct. Memo LEXIS 655, *30 n. 8. We must do so now.
Section 1.451-5, Income Tax Regs., applies only to advance payments for goods to be delivered in a future tax year, or the building, construction, installation, or manufacture of which will not be completed until a future tax year. Thus, advance payments to Eagle for hours kits are eligible under the regulation only to the extent that a customer had a right under the contract to have Eagle apply the deposit to the purchase of a house kit in a future year.
We disagree in part with both parties. Under the purchase agreements, Eagle's obligation to provide a house kit ended if the customer did not arrange to pay the balance within 60 days of paying the front or, after paying the back, within 15 days of shipment. The average time to prepare a house kit for shipment was 4 to 6 weeks (i.e., 28 to 42 days). T.C. Memo 1997-569; 1997 Tax Ct. Memo LEXIS 655, *8. Thus, it is reasonable to conclude that purchase agreements signed more than 87 days (60 + 42 - 15 days = 87 days) before the end of a tax year were for the sale of goods in that year; agreements signed 87 days of less from the end of a tax *500 year potentially were for the sale of goods in a future year.
Petitioner argues that Eagle's purchase agreements were for the sale of house kits in a future year because the term of those agreements was extended by a written change order. T.C. Memo 1997-569; 1997 Tax Ct. Memo LEXIS 655, *8. Petitioner points out that Eagle sent letters to customers who had not paid in full after paying a back deposit stating that Eagle would credit the customer's deposit toward the purchase of a house for 7 years. Id. We disagree with petitioner's contention because, under the purchase agreement, Eagle had a right to insist that the customer forfeit the deposit if the customer did not buy a house kit 60 days after making a deposit, or within an additional 27 days (i.e., 42 - 15). T.C. Memo 1997-569; 1997 Tax Ct. Memo LEXIS 655, *7. The purchase agreement did not require Eagle to refund deposits or apply them to later purchases if the customer did not buy a house kit within these time limits. T.C. Memo 1997-569; 1997 Tax Ct. Memo LEXIS 655, *7. The purchase agreements states that:
This Agreement contains the entire Agreement between the parties respecting the purchase of an Eagle's Nest HOUSE. Any representation in connection therewith not incorporated herein shall not be binding upon either party. *501 Id.
Petitioner contends that all the events had not occurred which fixed Eagle's right to retain deposits at the end of each year. We disagree in part. As discussed above, all the events had occurred that entitled Eagle to retain deposits at the end of each year, except for those agreements signed in the last 87 days of each year. See Signet Banking Corp. v. Commissioner, 106 T.C. 117, 128 (1996), affd. 118 F.3d 239 (4th Cir. 1997) (accrual basis bank denied deferral under Rev, Proc. 71-72 of annual membership fees it received from its credit card customer; bank's right to receive nonrefundable fees was not contingent on performance of any service after the year of receipt); in accord, Barnett Banks of Florida, Inc., and Subsidiaries v. Commissioner, 106 T.C. 103 (1996) (annual membership fees charged by an accrual basis bank to its credit card customers were deferrable under Rev. Proc. 71-72 by the bank beyond the year of receipt because the fees were not nonrefundable and were paid for services).
Respondent contends that Eagle did not treat deposits differently depending on whether the purchase agreement was *502 for the sale of a house kit in the current year or in a future taxable year. We agree. Eagle included in income the percentage of unapplied deposits on hand at the end of the year which, based on the 1990 study, Eagle would not apply to a house purchase within 4 years. T.C. Memo 1997-569, 1997 Tax Ct. Memo LEXIS 655, . As discussed above, Eagle may defer reporting customer deposits under section 1.451-5, Income Tax Regs., only to the extent that it received them for the sale of goods in a future taxable year. Thus, Eagle may not use section 1.451-5, Income Tax Regs., to the extent that Eagle deferred reporting payments for sale of house kits in the current year.
We hold that Eagle's sales agreements were not for the sale of goods in a future tax year except for those agreements signed in the last 87 days of its 1990, 1991, and 1992 tax years.
C. Sanctons Issue
In the motion for reconsideration, petitioner requests that we increase the sanction imposed on respondent for the misconduct or respondent's revenue agent from $ 5,000 to $ 31,018.70.
Petitioner attached to the motion to reconsider an affidavit of an employee of petitioner's counsel's law firm in which *503 she attests that the fees and expenses incurred by petitioner in the motion in limine addressed to the burden of proof as the result of respondent's misconduct was $ 31,018.70. Petitioner contends that we should increase the sanction imposed on respondent for the misconduct of respondent's revenue agent to $ 31,018.70, the actual amount of petitioner's costs as the result of respondent's misconduct.
We disagree. Petitioner's supporting affidavit states the total amount of fees and expenses petitioner incurred "as a result of the Government's conduct addressed in the Motion in Limine relating to the burden of proof." The affidavit does not provide details showing that the amount claimed was directly attributable to respondent's conduct for which we imposed sanctions.
Petitioner's motion in limine addressed respondent's alleged failure to properly raise the accounting issue but did not address the misconduct of respondent's agent. Thus, petitioner's costs incurred in filing and pursuing petitioner's motion in limine included costs related to matters other than respondent's agent's conduct, such as shifting the burden of proof to respondent because the notice of deficiency did not describe *504 the basis for the amounts of tax due as required by section 7522.
The effect of respondent's agent's conduct was to cause petitioner to incur additional litigation expenses. T.C. Memo 1997-569; 1997 Tax Ct. Memo LEXIS 655, *37. However, petitioner was not prejudiced n presenting the merits of this case by respondent's agent's conduct. T.C. Memo 1997-569; 1997 Tax Ct. Memo LEXIS 655, *36. We imposed a sanction of $ 5,000. T.C. Memo 1997-569; 1997 Tax Ct. Memo LEXIS 655, *36. We continue to believe that amount was appropriate.
D. Conclusion
For the reasons stated above, it is ORDERED that petitioner's Motion for Reconsideration of Findings and Opinion, filed February 2, 1998, is granted in part and denied in part in that (1) Eagle held the house kits at issue for sale to customers in the ordinary course of its trade or business, (2) Eagle substantially complied with section 1.451-5(d), Income Tax Regs., in tax years 1990, 1991, and 1992; (3) Eagle's sales agreements were not for the sale of goods in a future tax year except for those agreements signed in the last 87 days of its 1990, *505 1991, and 1992 tax years; and (4) we do not modify the sanction previously imposed on respondent.
/s/
John O. Colvin
Judge
Dated: Washington, D.C.
May 6, 1999 Footnotes
1. Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩