# United States Tax Court

T.C. Memo. 2023-31

GEORGE B. DENGIN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 5822-17.                          Filed March 14, 2023.

————————

*Jonathan I. Reich* and *Michael C. Cohen*, for petitioner.

*Gregory Michael Hahn* and *Amy Chang*, for respondent.


## MEMORANDUM OPINION

BUCH, *Judge*: George B. Dengin was the owner and beneficiary of three Canadian Registered Retirement Savings Plans (RRSPs) during 2006 through 2011, the years in issue. Two of those plans closed in 2006 and the third plan was opened in May 2006 and remained open throughout the years in issue.

Although Mr. Dengin is a Canadian citizen and lived in Canada for most of his life, he was a U.S. citizen by birth and until his formal expatriation in 2016. Unaware of his U.S. tax filing obligations, he failed to file U.S. federal income tax returns for the years in issue until after he was already under examination.

Earnings from Canadian retirement plans are included in income for U.S. tax purposes as they accrue, but a taxpayer can elect to defer that income until a distribution is made from a plan. During the years in issue, a taxpayer could make this election by attaching Form 8891, U.S. Information Return for Beneficiaries of Certain Canadian Registered Retirement Plans, to a timely filed return. Mr. Dengin made

[*2] such an election as to one of his three accounts on untimely returns filed in 2013. Thereafter, the Commissioner issued Revenue Procedure 2014-55, §§ 4.02, 9, 2014-44 I.R.B. 753, 754–55, which eliminated the timeliness requirement and was retroactive to 1996. That revenue procedure also rendered Form 8891 obsolete as of December 31, 2014, after Mr. Dengin had filed his returns. *See id.* § 5.02, 2014-44 I.R.B. at 755.

Pending before the Court is the Commissioner's Motion for Partial Summary Judgment, asking the Court to conclude that Mr. Dengin failed to make a proper election. Mr. Dengin substantially complied with Revenue Procedure 2014-55 as to the accounts opened and held during the tax years for which he filed returns. That revenue procedure was retroactive to the years in issue and eliminated the timely return requirement. Because he did not file returns for tax years earlier than 2006, he failed to make an election with respect to the plan opened before 2006.

## *Background*[1]

Until 2016, George Dengin was a dual citizen of the United States and Canada. He was born in the United States but moved to Canada in 1965 when he was approximately 10 years old. Mr. Dengin became a naturalized Canadian citizen in 1970 and has resided in Canada since his move. He married in 2003. His wife, Inessa Dengin, is a citizen and resident of Canada.

In 1980, Mr. Dengin became a licensed stockbroker and investment adviser in Canada. He worked as a licensed stockbroker from 1980 to 1985 and 1990 to 2000. During this time, he also began investing in stocks for his own accounts. By 2000, his investments were so lucrative that he retired from being a stockbroker and concentrated solely on his personal investments.

Mr. Dengin was the beneficiary and owner of several RRSPs. Before 2006, Mr. Dengin's retirement funds were held in an RRSP account with Graydon Elliot Capital (RRSP Account 1). RRSP Account 1 was closed in February 2006, and the assets in the account were

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are shown in U.S. dollars and rounded to the nearest dollar.

**[\*3]** transferred to another RRSP account with Graydon Elliot Capital (RRSP Account 2). RRSP Account 2 was closed in May 2006, and its assets were transferred to an RRSP account with Union Securities, Ltd. (RRSP Account 3). RRSP Account 3 remained open until Union Securities went out of business in 2012.[2]

During the time Mr. Dengin owned the RRSP accounts, their fair market value increased because of his investment activities. He did a substantial amount of stock trading within and between these accounts. Under Canadian law, the gain earned in Mr. Dengin's RRSP accounts did not result in taxable income until he received a distribution. *See* Income Tax Act, R.S.C. 1985, c. 1 (5th Supp.), § 146(8). Mr. Dengin began taking withdrawals from RRSP Account 3 in 2011. That year, he received a distribution of $3,548,252.

In 2012, the Commissioner commenced a federal income tax examination for Mr. Dengin's 2006 through 2011 tax years. When the examination began, Mr. Dengin did not have a Social Security number, nor had he ever filed a U.S. individual income tax return. He was unaware of his U.S. tax filing requirements, and as a result, had not sought advice about those requirements from his longtime accountant.

Mr. Dengin applied for and received a Social Security number, and in March 2013, he submitted tax returns for the years under examination. He attached a Form 8891 to each return, indicating that he had made an election under Article XVIII(7) of the United States' tax treaty with Canada[3] to defer U.S. tax on income earned in RRSP Account 3 until a distribution was made from that account. He did not attach Form 8891 for RRSP Account 1 or RRSP Account 2 to any return.

---

[2] When Union Securities went out of business, the assets in RRSP Account 3 were transferred to an RRSP account with PI Financial Corp. In 2014, Mr. Dengin transferred the assets from PI Financial Corp. to an RRSP account with Global Securities Corp. He eventually closed his RRSP account with Global Securities Corp. in 2015, withdrawing all funds from the account. In addition to the accounts above, Mr. Dengin opened and closed an RRSP account with the Bank of Montreal in 2006 without any activity having taken place in the account.

[3] Convention With Respect to Taxes on Income and on Capital, Can.-U.S., Sept. 26, 1980, T.I.A.S. No. 11,087, as Amended by the Protocols signed on June 14, 1983, T.I.A.S. No. 11,087 (Protocol 1), and March 28, 1984, T.I.A.S. No. 11,087 (Protocol 2), 1986-2 C.B. 258. It was further amended by Protocols signed on March 17, 1995, T.I.A.S. No. 97-1216 (Protocol 3), July 29, 1997, T.I.A.S. No. 97-1216 (Protocol 4), and September 21, 2007, T.I.A.S. No. 08-1215.2 (Protocol 5). We refer to the Convention and the Protocols collectively as the U.S.-Canada Income Tax Treaty or Treaty.

**[\*4]** On his 2011 return, he reported the $3,548,252 distribution from RRSP Account 3 as taxable income from pensions and annuities.

In 2016, Mr. Dengin relinquished his U.S. nationality. He made a formal renunciation of his U.S. nationality on October 3, 2016, which the U.S. State Department approved on November 3, 2016. Mr. Dengin notified the IRS of his expatriation in 2017.

On December 8, 2016, the Commissioner sent Mr. Dengin a notice of deficiency for 2006 through 2011. The adjustments in that notice were based on the Commissioner's determination that Mr. Dengin was subject to U.S. tax on undistributed earnings in his RRSP accounts for the years in issue because he failed to make the election to defer taxation under Article XVIII(7).[4] The determinations are as follows:

| Year | Deficiency | Additions to Tax / Penalties | |
|---|---|---|---|
| | | § 6651(a)(1) | § 6662(a) |
| 2006 | $6,170,062 | $1,542,516 | $1,234,012 |
| 2007 | 7,003,016 | 1,750,754 | 1,400,603 |
| 2008 | 5,701,781 | 1,425,445 | 1,140,356 |
| 2009 | 3,295,133 | 823,783 | 659,027 |
| 2010 | 7,450,688 | 1,862,672 | 1,490,138 |
| 2011 | 3,075,585 | 768,896 | 615,117 |

While residing in Canada, Mr. Dengin timely petitioned the Tax Court. In the Petition, he alleges that the Commissioner erred in including income accrued in his RRSP accounts as taxable income for each year in issue.

Pending before us is the Commissioner's Motion for Partial Summary Judgment asking us to decide whether capital gain and interest income that accrued in Mr. Dengin's RRSP accounts is includible in his taxable income for the years in issue. The Commissioner argues that Mr. Dengin did not make a proper election to defer U.S. tax on undistributed earnings in his RRSP accounts pursuant to Article XVIII(7). Mr. Dengin objects to this Motion, alleging that the income is not includible in his taxable income for the years in issue

---

[4] Because the Commissioner took the position that the undistributed income was taxable when earned, the Commissioner made a corresponding determination that the 2011 distribution of $3,548,252 was not includible in Mr. Dengin's taxable income at the time of distribution.

**[\*5]** because he met or substantially complied with the requirements to make the tax deferral election.

*Discussion*

I.   *Summary Judgment Standard*

We grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of showing that there is no genuine dispute as to any material fact. *Sundstrand Corp.*, 98 T.C. at 520. When a motion for summary judgment is properly made and supported, an opposing party may not rest on mere allegations or denials. Rule 121(d). Rather, the party's response, by affidavits or declarations, or as otherwise provided in Rule 121, must set forth specific facts showing there is a genuine factual dispute for trial. *Id.* In deciding whether to grant summary judgment, we view the facts and make inferences in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. For the purposes of this Motion, we make factual inferences in the light most favorable to Mr. Dengin, the nonmoving party.

II.  *Overview of Deferral Election from U.S.-Canada Income Tax Treaty*

The U.S.-Canada Income Tax Treaty was negotiated in 1980. Since then, it has been amended five times.[5]

Article XVIII(7) of the Treaty "provides a method to resolve conflicts between the Canadian and U.S. tax treatment of individual retirement accounts." Treasury Department Technical Explanation of the U.S.-Canada Income Tax Treaty, as Amended by the Protocol Signed on June 14, 1983 and the Protocol Signed on March 28, 1984, *as reprinted in* 1987-2 C.B. 298, 324 (Treasury Technical Explanation of Protocols 1 and 2).[6] Generally, a U.S. citizen who is a beneficiary of a

---

[5] These amendments are referred to as "protocols." The relevant amendments in this case are Protocol 3 and Protocol 5.

[6] This provision initially appeared in Article XXIX(5), but Protocol 3 moved it to Article XVIII(7) and made it reciprocal for Canadian citizens and residents, whereas it was previously applicable only to U.S. citizens and residents. *See* Treasury Technical Explanation of Protocols 1 and 2; Treasury Department Technical Explanation of the

[*6] Canadian retirement plan is taxed on plan earnings as they accrue for U.S. tax purposes and when they are distributed for Canadian tax purposes. *Id.* Article XVIII(7) enables consistent treatment in both the United States and Canada if an election is made by the taxpayer.

The latest version of Article XVIII(7), as amended by Protocol 5, provides:

> A natural person who is a citizen or resident of a Contracting State and a beneficiary of a trust, company, organization or other arrangement that is a resident of the other Contracting State, generally exempt from income taxation in that other State and operated exclusively to provide pension or employee benefits may elect to defer taxation in the first-mentioned State, subject to rules established by the competent authority of that State, with respect to any income accrued in the plan but not distributed by the plan, until such time as and to the extent that a distribution is made from the plan or any plan substituted therefor.[7]

Essentially, this article provides that a U.S. citizen or resident can elect to defer U.S. tax on income that accrues in a Canadian retirement account until a distribution is made from that account. While Article XVIII(7) enables taxpayers to elect deferral, it does not inform them how to make this election. Instead, it grants each country the power to establish rules for making an election. In the United States this power is vested in the IRS. The IRS has issued several revenue procedures and notices detailing the requirements an individual must satisfy to make this election.

---

Protocol Amending the U.S.-Canada Income Tax Treaty, as Amended by the Protocols Signed on June 14, 1983 and March 28, 1984.

[7] Article XVIII(7) was not modified in Protocol 4, and it is substantially the same under Protocol 5 as it was under Protocol 3. Protocol 5 replaced the word "under" with "subject to" to clarify "that an election to defer taxation with respect to undistributed income accrued in a plan may be made whether or not the competent authority . . . has prescribed rules for making an election." *See* Department of the Treasury Technical Explanation of the Protocol Done at Chelsea on September 21, 2007 Amending the U.S.-Canada Income Tax Treaty, as Amended by the Protocols Done on June 14, 1983, March 28, 1994, March 17, 1995, and July 29, 1997; U.S.-Canada Income Tax Treaty.

[*7] III.     *Requirements to Obtain Treaty Benefits*

    A.     *Revenue Procedure 89-45*

In 1989, the Commissioner issued Revenue Procedure 89-45, 1989-2 C.B. 596, which provided the original requirements for making the deferral election under the Treaty. The revenue procedure required taxpayers to attach a written statement to a timely filed Form 1040, U.S. Individual Income Tax Return, for the respective year. *Id.* § 3.01, 1989-2 C.B. at 596. The statement had to include the following information: the name of the plan trustee and plan account number; the total amount of earnings the plan derived in the current year; the total amount of contributions made to the plan while the beneficiary was a resident of Canada as of the end of the taxable year; the total amount contributed to the plan in all years; the amount of earnings that will be deferred under the Treaty for the current year; and the plan balance at the end of the current year. *Id.* If a taxpayer wanted to continue making this election in subsequent years, the taxpayer was required to attach a statement to his or her federal tax return for that year that showed (1) an election was made under the revenue procedure for the prior year and (2) the plan balance at the end of the return year. *Id.* § 3.04, 1989-2 C.B. at 596.

    B.     *Revenue Procedure 2002-23*

The IRS modified the requirements for making the deferral election when it issued Revenue Procedure 2002-23, §§ 1, 7, 2002-1 C.B. 744, 744–45, which superseded Revenue Procedure 89-45 and became effective for tax years ending on or after December 31, 2001. However, if the tax year ended before that date and began on or after January 1, 1996, the taxpayer could make the deferral election by satisfying either Revenue Procedure 89-45 or Revenue Procedure 2003-23. Rev. Proc. 2002-23, § 7.

To elect deferral under this revenue procedure, taxpayers were required to attach a written statement to a timely filed tax return for the respective year. *Id.* § 4.02, 2002-1 C.B. at 745. The statement had to include the following information: a statement claiming the benefit of Article XVIII(7); the name of the plan trustee and the plan account number; and the plan balance at the beginning of the current year. *Id.* § 4.01, 2002-1 C.B. at 745. If the taxpayer wanted to continue making this election in subsequent years, each year the taxpayer would have to

**[\*8]** repeat this process until a final distribution was made from the plan. *Id.* § 4.02.

Although this revenue procedure generally required taxpayers to attach their election statement to a timely filed return, it also allowed an extension of time to make the election under procedures provided in Treasury Regulation §§ 301.9100-1 and 301.9100-3. Rev. Proc. 2002-23, § 4.06, 2002-1 C.B. at 745.

    C.    *Notice 2003-75*

In 2003, the IRS issued I.R.S. Notice 2003-75, § 5, 2003-2 C.B. 1204, effective for taxable years beginning after December 31, 2002. This notice established a simplified reporting regime for taxpayers who held interests in Canadian retirement plans. The notice coordinated certain reporting rules with the requirements for making a deferral election under Revenue Procedure 2002-23. Notice 2003-75, § 2.01, 2003-2 C.B. at 1204. Before Notice 2003-75, taxpayers who made the deferral election had to comply with Revenue Procedure 2002-23, were subject to section 6048 reporting requirements, and had to file Form 3520, Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts, or Form 3520–A, Annual Information Return of Foreign Trust With a U.S. Owner, or both, annually. Rev. Proc. 2014-55, § 2.04, 2014-44 I.R.B. at 753. Notice 2003-75, § 2.01, 2003-2 C.B. at 1204, enabled such taxpayers to comply with all of these requirements by attaching a single form to a timely filed return. This form, Form 8891, was released in 2004. *See* Rev. Proc. 2014-55, § 2.07, 2014-44 I.R.B. at 754.

    D.    *Revenue Procedure 2014-55*

In 2014, the IRS again modified the requirements for making the deferral election through Revenue Procedure 2014-55, §§ 1, 8, 9, 2014-44 I.R.B at 753, 755, which superseded Revenue Procedure 2002-23 and Notice 2003-75 and is effective for tax years beginning on or after January 1, 1996. This revenue procedure makes the election automatic in certain circumstances and no longer requires taxpayers to file statements with their returns. Rev. Proc. 2014-55, §§ 4.02, 4.06, 5.02, 9, 2014-44 I.R.B. at 754–55. Its issuance rendered Form 8891 obsolete as of December 31, 2014. *Id.* §§ 5.02, 9.

Under Revenue Procedure 2014-55, a taxpayer who is an "eligible individual" who did not previously make a deferral election under the Treaty is automatically treated as having made the election in the first

[*9] year in which the individual would have been entitled to elect the benefits with respect to the plan.[8] *Id.* § 4.02. This means that the taxpayer does not have to comply with the reporting requirements provided in prior revenue procedures. *Id.* § 4.06. Any election made pursuant to this revenue procedure is made on a plan-by-plan basis. *Id.* § 3, 2014-44 I.R.B. at 754.

Revenue Procedure 2014-55, § 4.01, 2014-44 I.R.B. at 754, defines an "eligible individual" as a beneficiary of a Canadian retirement plan who:

> A) Is or at any time was a U.S. citizen or resident (within the meaning of section 7701(b)(1)(A)) while a beneficiary of the plan;
> B) Has satisfied any requirement for filing a U.S. Federal income tax return for each taxable year during which the individual was a U.S. citizen or resident;
> C) Has not reported as gross income on a U.S. Federal income tax return the earnings that accrued in, but were not distributed by, the plan during any taxable year in which the individual was a U.S. citizen or resident; and
> D) Has reported any and all distributions received from the plan as if the individual had made an election under Article XVIII(7) of the Convention for all years during which the individual was a U.S. citizen or resident.

If the taxpayer is not an eligible individual, then the taxpayer must seek the Commissioner's consent to make the deferral election. *Id.* § 4.04, 2014-44 I.R.B. at 755.

Additionally, certain taxpayers who are not eligible individuals may be able to defer tax on RRSP earnings through alternative methods. When Revenue Procedure 2014-55 was issued, the IRS had recently begun offering Streamlined Foreign Offshore Procedures (Streamlined Program) to taxpayers who certified that they nonwillfully failed to report and pay tax with respect to foreign assets. *See* Internal Revenue

---

[8] Mr. Dengin did not previously make the deferral election under Revenue Procedure 2002-23 because he failed to attach Form 8891 to a timely filed return. *See Kohli v. Commissioner*, T.C. Memo. 2009-287, 98 T.C.M. (CCH) 572, 573 ("[T]he substantial compliance doctrine has no place in determining whether a timely election has been made." (footnote omitted)).

**[\*10]** Service, *Streamlined Filing Compliance Procedures*, https://www.irs.gov/individuals/international-taxpayers/streamlined-filing-compliance-procedures (last updated Oct. 12, 2022). The Streamlined Program provided procedures for filing amended or delinquent returns and terms for resolving tax and penalties. *Id.* Relevantly, taxpayers participating in the program were sometimes offered relief consistent with Revenue Procedure 2014-55 if they failed to satisfy its requirements. For example, in the Streamlined Program frequently asked questions and answers for U.S. taxpayers residing outside the United States, the IRS stated that a taxpayer that is not an eligible individual because they failed to file a U.S. tax return for each year they were a U.S. citizen or resident, but met the other requirements, will still be afforded relief consistent with Revenue Procedure 2014-55 for the tax years included in their submission if they submit the tax returns through the streamlined program. *See* Internal Revenue Service, *Streamlined Filing Compliance Procedures for U.S. Taxpayers Residing Outside the United States Frequently Asked Questions and Answers*, Q&A-3, https://www.irs.gov/individuals/international-taxpayers/streamlined-filing-compliance-procedures-for-us-taxpayers-residing-outside-the-united-states-frequently-asked-questions-and-answers (last updated Nov. 18. 2022).

IV.    *The Commissioner's Arguments*

The Commissioner puts forth three arguments to support his Motion for Partial Summary Judgment. The first argument is that Mr. Dengin is not entitled to automatic relief under Revenue Procedure 2014-55 because he is not an eligible individual. The Commissioner contends that Mr. Dengin is not an eligible individual because pursuant to section 4.01(B) of the revenue procedure he (1) did not timely file his U.S. tax returns and (2) did not file a tax return for each year he was a U.S. citizen and required to file. The Commissioner's second argument is that because Mr. Dengin failed to attach Forms 8891 to timely filed U.S. tax returns or request an extension to file the form with a late return under Treasury Regulation § 301.9100-2, he has not satisfied the deferral election requirements under Revenue Procedure 2002-23. Lastly, the Commissioner argues that the doctrine of substantial compliance does not apply in determining whether Mr. Dengin satisfied the deferral election requirements under Revenue Procedure 2014-55 or Revenue Procedure 2002-23. The Commissioner contends that strict compliance is required because the issue to be determined goes to the substance or essence of both revenue procedures.

**[\*11]** V.     *Revenue Procedure 2014-55, § 4.01(B)*

In the Motion for Partial Summary Judgment, the Commissioner does not dispute whether Mr. Dengin satisfied requirements (A), (C), and (D) of Revenue Procedure 2014-55, § 4.01, which require that the taxpayer be a U.S. citizen or resident while a beneficiary of a plan, the taxpayer not report on a federal tax return undistributed income accrued in a plan during any year in which the taxpayer is a U.S. citizen or resident, and the taxpayer report distributions received from a plan for all years in which the taxpayer is a U.S. citizen or resident. The only requirement at issue is section 4.01(B)—namely, whether Mr. Dengin filed a U.S. federal income tax return for each taxable year during which he was a U.S. citizen or resident.

A.     *The Requirement to Timely File*

The Commissioner argues that Mr. Dengin is not an eligible individual under Revenue Procedure 2014-55 because he did not timely file U.S. tax returns as required under section 4.01(B). Mr. Dengin argues that there is no timeliness requirement under that section. We agree with Mr. Dengin; there is no requirement in section 4.01(B) that the returns be timely filed.

Courts have generally used statutory interpretation principles when interpreting the text of revenue procedures. *See, e.g.*, *Ford Motor Co. v. United States*, 768 F.3d 580, 591–93 (6th Cir. 2014) (applying statutory canons to assess competing interpretations of a revenue procedure before considering their consistency with its general policy and structure); *Dillon, Read & Co. v. United States*, 875 F.2d 293, 298 (Fed. Cir. 1989) (applying the statutory canon of construction that looks at every material part of a statute to examine the parties' interpretation of a revenue procedure). When faced with a question of textual interpretation, the starting point must be the text itself. *Hawse v. Commissioner*, T.C. Memo. 2015-99, at \*17. The text of Revenue Procedure 2014-55, § 4.01(B), does not include the word "timely," whereas Revenue Procedures 89-45 and 2002-23 both explicitly required taxpayers to timely file U.S. returns to make the deferral election. If the IRS wanted Revenue Procedure 2014-55 to include a timeliness requirement, it could have clearly stated it. *See Smith v. Commissioner*, 151 T.C. 41, 56 (2018) ("[W]here [a drafting authority] knows how to say something but chooses not to, its silence is controlling." (first alteration in original) (quoting *CBS, Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1226 (11th Cir. 2001))). The Commissioner is asking this Court to

**[*12]** insert a timeliness requirement in Revenue Procedure 2014-55 even though it could have been written into the procedure as it was in Revenue Procedure 2002-23 and Revenue Procedure 89-45. We refuse to do so.

Our conclusion is further supported by the IRS's reasoning for issuing Revenue Procedure 2014-55. The IRS explained that Revenue Procedure 2014-55 was issued to make it easier for taxpayers to comply with the deferral election requirements under Article XVIII(7). *See* I.R.S. News Release IR-2014-97 (Oct. 7, 2014). Reading Revenue Procedure 2014-55 as forgoing the timeliness requirement is consistent with this reasoning. Therefore, we find that Revenue Procedure 2014-55, § 4.01(B), does not include a timeliness requirement.

B.      *The Requirement to File for Each Taxable Year*

The Commissioner argues that Mr. Dengin is not an eligible individual under Revenue Procedure 2014-55 because he did not "[file] a U.S. federal income tax return for each taxable year during which [he] was a U.S. citizen" as required under section 4.01(B). We understand the Commissioner to have interpreted "each taxable year" to include each year in which a taxpayer has received taxable income. The Commissioner therefore argues that because Mr. Dengin has filed returns only for 2006 to 2011, he does not satisfy this requirement.

The Commissioner's argument runs contrary to his own guidance issued contemporaneously with Revenue Procedure 2014-55. On the same day Revenue Procedure 2014-55 was issued, the IRS issued a news release that summarized the revenue procedure and its applicability. *See* I.R.S. News Release IR-2014-97. The news release stated that U.S. citizens and residents would automatically qualify for the tax deferral election "as long as they filed and continue to file U.S. returns for any year they held an interest in an RRSP . . . and include any distributions as income on their U.S. returns." *Id.* This guidance provides a more lenient interpretation of "each taxable year."

Mr. Dengin argues that he has satisfied this requirement for RRSP Account 2 and RRSP Account 3. He interprets "each taxable year" as "each taxable year in which the taxpayer had the RRSP account for which the deferral is requested." He therefore argues that, because he is requesting deferral only for his RRSP accounts held from 2006 to 2011, and he filed returns for those years, he has satisfied section 4.01(B). On

**[\*13]** the basis of the discussion below, we find that Mr. Dengin does not strictly satisfy this requirement for RRSP Account 1, 2, or 3.

1.     *Mr. Dengin's Arguments to Support His Interpretation of "Each Taxable Year"*

Mr. Dengin puts forth three arguments as to why his interpretation of "each taxable year" includes only years for which deferral is requested. First, he argues that his interpretation harmonizes section 4.01(B) with section 4.01(A), which requires that the taxpayer be a U.S. citizen or resident while a beneficiary of the plan. This argument is unpersuasive. In our discussion above, we noted that when a drafting authority knows how to say something, but chooses not to, the silence informs the Court. *See Smith*, 151 T.C. at 56. If the IRS wanted section 4.01(B) to require taxpayers to file returns only for the years in which they held the RRSP account for which they request deferral, it would have stated that.

Next, Mr. Dengin argues that because Revenue Procedure 2014-55 arose in the context of the Streamlined Program, terms of that program should inform our interpretation of "each taxable year."[9] But although the Streamlined Program provides relief consistent with relief available under Revenue Procedure 2014-55, it does not deem participants to have satisfied the revenue procedure, and it does not inform us on how to interpret the requirements of Revenue Procedure 2014-55. Mr. Dengin is asking the Court to insert Streamlined Program guidance into the Revenue Procedure. We decline to do so.

Lastly, Mr. Dengin argues that because Revenue Procedure 2014-55 was intended to simplify the deferral election requirements, "each taxable year" should be interpreted in a way that is not burdensome. Mr. Dengin is correct in that the issuance of Revenue Procedure 2014-55 makes the deferral election requirements less burdensome for taxpayers. However, we must apply the revenue procedure as written. If we look strictly at the text in the revenue procedure, Mr. Dengin's interpretation goes against the plain and ordinary meaning of "each taxable year."

---

[9] Mr. Dengin did not request to participate in the Streamlined Program, and even if he had, he might not have been eligible. *See Streamlined Filing Compliance Procedures*, *supra* ("If the IRS has initiated a civil examination of taxpayer's returns for any taxable year, . . . the taxpayer will not be eligible to use the streamlined procedures.").

**[\*14]** Mr. Dengin does not point to any other IRS guidance to support his interpretation. Therefore, we reject his interpretation of "each taxable year" because it goes against the plain and ordinary meaning of the revenue procedure. Furthermore, a more lenient interpretation of "each taxable year" includes each year the taxpayer held an interest in an RRSP, not just the years in which the taxpayer held an interest in the RRSP for which deferral is requested, as Mr. Dengin argues.

2.      *Whether Mr. Dengin Filed a Return for "Each Taxable Year"*

We need not decide the precise meaning of "each taxable year" because under any reasonable interpretation of "each taxable year," Mr. Dengin fails to strictly satisfy Revenue Procedure 2014-55, § 4.01(B), for RRSP Accounts 1, 2, and 3. The phrase "each taxable year" could be interpreted as either (1) for each year a taxpayer receives taxable income or (2) for each year the taxpayer holds an interest in an RRSP. We will consider the facts under both interpretations, but Mr. Dengin does not satisfy the requirements under either interpretation.

If we accepted the Commissioner's argument that "each taxable year" means each year a taxpayer receives taxable income, Mr. Dengin would not satisfy this requirement because he failed to file a U.S. tax return for each year that he received taxable income. To qualify for relief under this approach, Mr. Dengin must have filed U.S. returns from at least 1980, when he began working as a stockbroker, until his expatriation in 2016; but for purposes of this opinion, he must have filed returns from 1980 until 2011, the last year in issue. He filed returns only from 2006 to 2011, so he would not satisfy this requirement.

But Mr. Dengin also fails to satisfy the less stringent requirement that he have filed tax returns for each year he was a beneficiary of an RRSP account. To qualify for relief under this approach, Mr. Dengin must have filed a U.S. return for each year in which he was a beneficiary of an RRSP account. Because Mr. Dengin was a beneficiary of RRSP Account 1 before 2006, and he did not file a U.S. return before 2006, he does not satisfy this requirement.

C.      *The Doctrine of Substantial Compliance*

Because we determined that Mr. Dengin failed to strictly comply with section 4.01(B), we will consider whether he substantially complied. Under the doctrine of substantial compliance, a taxpayer may satisfy regulatory and other requirements by "less-than-literal

**[*15]** compliance" in certain circumstances. *Am. Air Filter Co. v. Commissioner*, 81 T.C. 709, 719 (1983).[10]

The Commissioner argues that the doctrine of substantial compliance should not apply to section 4.01(B) because the requirement to file a return for each tax year that a taxpayer is a U.S. citizen is essential to taking advantage of the deferral election under the Treaty. The Commissioner therefore contends that Mr. Dengin must strictly comply with the requirement if he wants to make the deferral election for each of his RRSPs.

Mr. Dengin argues that the doctrine of substantial compliance should apply to section 4.01(B). His main argument is that because the doctrine can be used to determine compliance with regulatory requirements, it should be applied more liberally to determine compliance with section 4.01(B), an administrative requirement from a revenue procedure. We conclude that Mr. Dengin has substantially complied with section 4.01(B) for RRSP Accounts 2 and 3, but he failed to substantially comply for RRSP Account 1.

### 1. *Applicability of the Substantial Compliance Doctrine*

This Court has applied the doctrine of substantial compliance to regulations and other IRS guidance such as revenue procedures. *See Coca-Cola Co.*, 155 T.C. at 287. The question we must ask in determining whether to apply substantial or strict compliance to a requirement is whether the requirement relates "to the substance or essence of the [governing law]." *Bond v. Commissioner*, 100 T.C. 32, 40–41 (1993) (quoting *Taylor v. Commissioner*, 67 T.C. 1071, 1077–78 (1977) and authorities cited therein). If the requirement is essential to the governing law, then it can be satisfied only by "strict adherence." *Id.* However, if the requirement is "procedural or directory in that [it is] not of the essence of the thing to be done," it can be satisfied "by substantial . . . compliance." *Id.*

The requirement at issue is Revenue Procedure 2014-55, § 4.01(B), which was issued to provide guidance for applying Article XVIII(7) of the Treaty. Therefore, we must consider the essence or

---

[10] We have held that a taxpayer may satisfy requirements for making various elections through substantial, rather than strict, compliance. *See, e.g.*, *Coca-Cola Co. & Subs. v. Commissioner*, 155 T.C. 145, 287 (2020); *cf. Hawse*, T.C. Memo. 2015-99, at *22–24 (finding that the requirements of Revenue Procedure 97-37 required strict compliance).

**[\*16]** purpose of both Revenue Procedure 2014-55 and Article XVIII(7) of the Treaty to determine whether the section 4.01(B) requirement can be satisfied by substantial compliance.

The essence or substance of Article XVIII(7) is to help resolve inconsistent tax treatment of individual retirement accounts and thus avoid double taxation that can arise where timing of U.S. tax does not match the timing of foreign tax credits attributable to Canadian tax. *See* Treasury Technical Explanation of Protocols 1 and 2, 1987-2 C.B. at 324; Rev. Proc. 2014-55, § 2.01, 2014-44 I.R.B. at 753. The method allows U.S. taxpayers who are beneficiaries of Canadian retirement plans to make an election to defer tax on accrued earnings until they are distributed (consistent with Canadian treatment), subject to rules provided by the IRS. Treasury Technical Explanation of Protocols 1 and 2, 1987-2 C.B. at 324. The purpose of Revenue Procedure 2014-55 is to provide U.S. taxpayers that hold interests in Canadian retirement plans with guidance on how to make a tax deferral election to avoid inconsistent treatment beginning the year the taxpayer is a beneficiary of a given plan. *See* Rev. Proc. 2014-55, §§ 1, 3, 4.03, 2014-44 I.R.B. at 753–55.

Consistent with the purposes stated above, we conclude that section 4.01(B) is merely procedural. Regardless of which interpretation of "each taxable year" is used, section 4.01(B) requires the taxpayer to file returns for tax years that are not relevant in informing the IRS whether income should have been reported from an RRSP account. Therefore, substantial compliance with the requirement will suffice.

### 2. *Whether Mr. Dengin Substantially Complied*

A taxpayer will be deemed to have substantially complied with IRS guidance if the requirement is procedural and the taxpayer has fulfilled all other essential purposes of the guidance. *See Am. Air Filter Co.*, 81 T.C. at 719. Because we have found that section 4.01(B) is procedural, we need to determine only whether Mr. Dengin has fulfilled all other essential purposes of Revenue Procedure 2014-55.

This Court has found taxpayers to have substantially complied with election requirements even though they failed to follow the strict procedures in making the election when the taxpayer has provided the IRS with enough information to show that they have made the election in substance. *See Am. Air Filter Co.*, 81 T.C. at 720–21; *Tipps v. Commissioner*, 74 T.C. 458, 468 (1980) (holding that partnerships made section 167(k) elections even though they failed to provide all the

**[*17]** information required but clearly identified the properties and expenditures as to which the elections were being made); *Taylor*, 67 T.C. at 1078–79 (holding that the taxpayer fulfilled the essential requirements of section 1251(b)(4) even though they failed to attach the election to their tax returns because their returns showed that they used the accrual method of accounting).

However, in those cases, unlike the present case, the IRS required the taxpayer to provide some type of documentation to make the election. Here, the election automatically applies if the taxpayer is an eligible individual. Therefore, to comply with the section 4.01(B) requirement in substance, the taxpayer must file tax returns for each year they are the beneficiary of the plan for which they are seeking deferral. The taxpayer does not have to provide information with the returns to alert the IRS that the election was made. Furthermore, as we conclude above, the filings do not have to be timely. We look to each relevant RRSP account separately to determine whether Mr. Dengin substantially complied with this requirement.

a. *RRSP Account 1*

Mr. Dengin did not substantially comply with the section 4.01(B) requirement for RRSP Account 1. RRSP Account 1 was opened before 2006, and Mr. Dengin failed to file a return for each year he was a beneficiary of that account.

b. *RRSP Account 2*

Mr. Dengin substantially complied with the section 4.01(B) requirement for RRSP Account 2. RRSP Account 2 was opened and closed in 2006, and Mr. Dengin filed a tax return for that year.

c. *RRSP Account 3*

Mr. Dengin substantially complied with the section 4.01(B) requirement for RRSP Account 3. He filed a return for each year he was the beneficiary of the account. Furthermore, Mr. Dengin also attached Form 8891 with each return from 2006 to 2011, providing the name and number of the account, the address of the account, his name as the beneficiary, and the plan balance.

18

**[*18]** VI.    *Conclusion*

Mr. Dengin substantially complied with Revenue Procedure 2014-55, § 4.01(B),  for RRSP Accounts 2 and 3 when he filed his returns for 2006 through 2011. Because the Commissioner did not dispute any other criteria for being an eligible individual within the meaning of section 4.01, we will deny his Motion for Partial Summary Judgment in part for RRSP Accounts 2 and 3. However, because Mr. Dengin failed to substantially comply with section 4.01(B) for RRSP Account 1, we will grant his Motion for Partial Summary Judgment in part for that account.

To reflect the foregoing,

*An appropriate order will be issued.*