# United States Tax Court

T.C. Memo. 2023-65

RONALD SCHLAPFER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 419-20.                          Filed May 22, 2023.

————————

*Scott D. Michel*, *Ross R. Sharkey*, *Christopher S. Rizek*, and *Jeffrey S. Stephens*, for petitioner.

*Blake J. Corry*, *William Benjamin McClendon*, and *Randall S. Trebat*, for respondent.


## MEMORANDUM OPINION

BUCH, *Judge*: This case is before the Court on Cross-Motions for Summary Judgment. Ronald Schlapfer was the policyholder of a life insurance policy issued in 2006. The policy was funded by stock and cash from European Marketing Group, Inc. (EMG), an entity solely owned by Mr. Schlapfer. Mr. Schlapfer assigned ownership of the policy to his mother, aunt, and uncle.

In 2013, Mr. Schlapfer submitted a disclosure packet to the Internal Revenue Service (IRS) Offshore Voluntary Disclosure Program (OVDP). In this packet, he included a gift tax return for 2006 that informed the IRS that he had made gifts of EMG stock to his mother, aunt, and uncle. The IRS concluded that he made the gifts in 2007, not 2006, and that because he failed to file a gift tax return for that year, he did not adequately disclose the gift to commence the period of limitations on assessment.

**[\*2]**   The Commissioner generally has three years from the filing of a gift tax return to assess additional tax. If no return is filed, or if the gift is not adequately disclosed on or with the gift tax return, then the Commissioner may assess at any time. But the adequate disclosure of a completed gift on a gift tax return will commence the running of the period of limitations for assessment of gift tax on the transfer even if the transfer is ultimately determined to be an incomplete gift.

Mr. Schlapfer adequately disclosed the gift on his 2006 gift tax return. The documents he attached to, and referenced in, his return provided the Commissioner with enough information to satisfy adequate disclosure. Therefore, the period of limitations to assess the gift tax commenced when the return was filed; and because the Commissioner issued the notice of deficiency more than three years after the filing, the Commissioner is barred from assessing gift tax.

*Background*

Ronald Schlapfer has ties to both the United States and Switzerland. He was born in Switzerland in 1950 and remained there until 1978. While in Switzerland, he began a career in banking and finance, working at Bank Vontobel and then Citibank. In 1979 he moved to the United States with his first wife, whom he met while working in Tokyo. He moved to the United States to continue his career at Citibank. Through Citibank, Mr. Schlapfer obtained a nonimmigrant visa, which required a declaration that he did not intend to permanently reside in the United States. He later obtained a U.S. green card. Other than his wife, Mr. Schlapfer's immediate family, which included his mother, brother, aunt, and uncle, remained in Switzerland.

Mr. Schlapfer and his first wife had two daughters, who were born in 1979 and 1981. They all lived together in the United States until 1989 when Mr. Schlapfer and his first wife divorced. Thereafter, his first wife and their two daughters moved to Switzerland. His daughters returned to the United States in the mid-1990s for school.

Mr. Schlapfer married his current wife, Linda Schlapfer (Mrs. Schlapfer), in 1990. Like Mr. Schlapfer, she had been married previously. She and her first husband moved to the United States in 1978 and had a daughter in 1979. They divorced in the late 1980s. Mrs. Schlapfer married Mr. Schlapfer in 1990, and they had a son together in 1992.

**[*3]** After leaving Citibank in 1998, Mr. Schlapfer started his own businesses. First, he started a currency trading company in the United States called Tradex. Then in 2002, he formed EMG. EMG was a Panamanian corporation that managed investments, holding marketable securities and cash. Mr. Schlapfer owned all of its issued and outstanding shares (namely, 100 shares of common stock).

On May 18, 2007, Mr. Schlapfer applied for U.S. citizenship, and in 2008 he became a U.S. citizen.

I.  *The Life Insurance Policy*

On July 7, 2006, Mr. Schlapfer applied for a LifeBridge Universal Variable Life Policy (UVL Policy) offered by swisspartners Insurance Company SPC Ltd. (Swisspartners). Mr. Schlapfer's stated purpose for doing so was to create and fund a policy that his mother, aunt, and uncle could use to benefit his nephews, whose dad (Mr. Schlapfer's brother) had died in 1994. The application listed Mr. Schlapfer as the policyholder, his mother, aunt, and uncle as the insured lives, Mr. Schlapfer and Mrs. Schlapfer as the primary beneficiaries, and Mr. Schlapfer's three children and stepchild as the secondary beneficiaries. It also indicated that AIG Private Bank, Zurich (AIG) had been selected as custodian, meaning policy assets would be held there. On September 22, 2006, UVL Policy No. XXX-X03-06 was issued bearing the same policyholder, insured lives, primary and secondary beneficiaries, and custodian as requested in the application.

Mr. Schlapfer funded the UVL Policy premium with $50,000[1] and 100 shares of EMG.[2] The assets were held in an account at AIG titled "swisspartners Insurance Company SPC Ltd. Rubric: XXX-X03-06" (AIG Account). The initial premium payment was made on August 21, 2006, when EMG transferred $50,000 to the AIG Account. The next premium payment was made on September 22, 2006, when EMG issued a share certificate showing the AIG Account as the owner of all 100 shares of

---

[1] All monetary amounts are shown in U.S. dollars and rounded to the nearest dollar. Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Shares of an entity called FX Funds, Ltd., were also contributed to the UVL Policy. However, because FX Funds is a dormant entity with no assets, those shares are not relevant.

**[\*4]** EMG stock. Those shares were transferred to the AIG Account on November 8, 2006.

Mr. Schlapfer eventually substituted his mother, aunt, and uncle for himself as the policyholders. On January 23, 2007, Mr. Schlapfer initially requested that Swisspartners assign the policy to his mother as the policyholder with immediate effect. The next day, his mother signed a revised term sheet that made her the policyholder. Then on April 23, 2007, Mr. Schlapfer and his mother jointly requested that Swisspartners assign the policy so that Mr. Schlapfer's mother, aunt, and uncle would be joint policyholders. They also requested that the beneficiary designations be made irrevocable. These changes were executed on May 31, 2007. All other terms of the policy remained the same.

II.    *The Offshore Voluntary Disclosure Program*

In 2012, Mr. Schlapfer entered into the OVDP. The OVDP "offered U.S. taxpayers with undisclosed income from offshore assets a compliance avenue to resolve income tax liabilities" and "tax information reporting obligations." *See Internal Revenue Manual* 4.63.3.1 (Apr. 27, 2021). When disclosing assets, the OVDP required that taxpayers disregard all entities through which undisclosed assets were held. It also required taxpayers to pay all tax, interest, and penalties related to undisclosed assets during the most recent eight years, regardless of the statute of limitations. *See* I.R.S., *Offshore Voluntary Disclosure Program Frequently Asked Questions and Answers 2012*, Q7, Q9, Q42, https://www.irs.gov/individuals/international-taxpayers/offshore-voluntary-disclosure-program-frequently-asked-questions-and-answers-2012 (last updated June 27, 2021).

On November 20, 2013, Mr. Schlapfer, through counsel, submitted a disclosure packet to participate in the OVDP. The submission included the following items:

- Original Forms 1040, U.S. Individual Income Tax Return, for tax years 2004 through 2009;

- Forms 1040X, Amended U.S. Individual Income Tax Return, for tax years 2004 through 2009;

- Forms CT–1040, Connecticut Resident Income Tax Return, and Forms CT–1040X, Amended Connecticut Income Tax Return for Individuals, for tax years 2004 through 2009;

[*5]

- Forms 5471, Information Return of U.S. Persons With Respect to Certain Foreign Corporations;

- Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for 2006;[3]

- Reports of Foreign Bank and Financial Accounts (FBARs) for tax years 2004 through 2009;

- Bank Statements;

- Foreign Account or Asset Statements;

- A completed Penalty Computation Worksheet;

- A copy of OVDI Prepayment Check No. 2318 to the Department of the Treasury for $6 million for tax years 2004 through 2011;

- Consents, (i) Form 872, Consent to Extend the Time to Assess Tax, and (ii) Consent to Extend the Time to Assess Civil Penalties Provided by 31 U.S.C. § 5321 for FBAR Violations;

- An Offshore Entity Statement;

- An Offshore Voluntary Disclosure Letter with Required Attachments; and

- Copies of Forms 2848, Power of Attorney and Declaration of Representative, for Ronald Schlapfer and Linda Schlapfer.

With this submission, Mr. Schlapfer attempted to comply with applicable U.S. tax laws. For 2004, 2005, and 2006, he provided amended income tax returns that included Forms 5471 for EMG. Those forms provided information regarding the number and type of issued and outstanding shares, the number of shares held by Mr. Schlapfer, and EMG's income statement, balance sheet, and earnings and profits for the respective tax years. Mr. Schlapfer also provided an Offshore Entity Statement detailing his control over EMG, which stated:

> EMG was established by the Taxpayer in 2003, and was beneficially owned by the Taxpayer until July 6, 2006, at

---

[3] The gift tax return was attached to Mr. Schlapfer's 2006 amended return.

**[\*6]**  which time the Taxpayer gifted his entire interest in EMG to his mother. The Taxpayer is taking into account all of the income earned by the accounts underlying EMG in the enclosed Amended U.S. Individual Tax Returns during the years he controlled and beneficially owned EMG.

Mr. Schlapfer also included a Form 709 for 2006 with his submission. Attached to the Form 709 was a protective filing that stated:

> A PROTECTIVE FILING IS BEING SUBMITTED. ON JULY 6, 2006, TAXPAYER MADE A GIFT OF CONTROLLED FOREIGN COMPANY STOCK VALUED AT $6,056,686.

> PER U.S. TREASURY REGULATION 25.2501-1(B), THE TAXPAYER IS NOT SUBJECT TO U.S. GIFT TAX AS HE DID NOT INTEND TO RESIDE PERMANENTLY IN THE UNITED STATES UNTIL CITIZENSHIP WAS OBTAINED IN 2008.

This gift stemmed from Mr. Schlapfer's assignment of the UVL Policy. He reported the gift as stock rather than the UVL Policy because the 2012 OVDP instructions required taxpayers to disregard certain entities that hold underlying assets, and he believed the policy was such an entity.[4] He also contends that he prepared the 2006 gift tax return in accordance with the investor control doctrine. The Commissioner does not dispute that Mr. Schlapfer filed a gift tax return for 2006 when he submitted the disclosure packet to the OVDP.

On June 4, 2014, after reviewing the 2006 gift tax return in Mr. Schlapfer's OVDP submission, an IRS revenue agent issued him an information document request (IDR). The IDR asked Mr. Schlapfer to provide documentation (1) of the gift of EMG to his mother, including the transfer of ownership of the entity as well as the transfer of the ownership of foreign accounts related to the entity, and (2) to substantiate his claim that in 2006 he did not have an intent to remain in the country and is therefore exempt from paying gift tax.

---

[4] The Commissioner does not consider a life insurance policy an "entity" as defined under the 2012 OVDP instructions.

[*7]   Mr. Schlapfer promptly responded. He provided the following documents to show the transfer of his entire ownership interest in EMG to the AIG Account:

(1) a copy of the September 22, 2006, share certificate showing the AIG Account as the owner of all issued and outstanding shares in EMG;

(2) a copy of an AIG statement dated August 8, 2006, showing the initial premium payment of $50,000 to the AIG Account;

(3) a copy of an AIG statement showing EMG's portfolio valuation as of September 22, 2006; and

(4) a copy of the Bearer Share of FX Fund, Ltd., which was held in the AIG Account.

He provided the following additional documents to show that he made a gift to his mother:

(5) a copy of the updated UVL Policy term sheet signed by his mother on January 24, 2007;

(6) a copy of Mr. Schlapfer's signed instructions to Swisspartners to change the policyholder of the UVL Policy to his mother; and

(7) copies of the UVL Policy chart.

In addition to providing these documents, with his response Mr. Schlapfer explained his position as to the date of the gift transfer. He asserted that the gift was made on July 6, 2006, when he instructed Swisspartners to transfer ownership of the UVL Policy to his mother, aunt, and uncle as soon as the policy was issued. However, he also agreed to a revised gift date of September 22, 2006, the date the policy was issued. He explained that Swisspartners' naming him as a policyholder was a scrivener's error, and that the requests made in January and April 2007 were merely intended to correct that error. After his initial response to the IDR, Mr. Schlapfer quickly followed up with documents to substantiate his claim that he did not intend to remain in

[*8] the United States, in the form of affidavits from family members and business partners, in July 2014.[5]

Following his response to the IDR, the IRS had little contact with Mr. Schlapfer about his 2006 gift tax return until 2016, when it opened an examination of the return. On January 6, 2016, an IRS estate tax attorney notified Mr. Schlapfer of the examination and requested to meet with him to discuss his claim of nondomiciliary status in the United States for 2006. On May 17, 2016, an IRS estate tax attorney interviewed Mr. Schlapfer. Although most of the questions related to Mr. Schlapfer's domicile, there were also questions regarding the nature of the gift, when it was made, and the reported value of the gift. On June 14, 2016, Mr. Schlapfer signed a Form 872 for his 2006 gift tax return. He agreed to extend the time to assess tax to November 30, 2017.

In August 2016, the IRS issued Mr. Schlapfer a Form 3233, Report of Gift Tax Examination, for his 2006 gift tax return. In that report, the IRS concluded that there was no taxable gift in 2006 because Mr. Schlapfer made an incomplete transfer. It explained that because Mr. Schlapfer failed to relinquish dominion and control of the UVL Policy as the policyholder until May 31, 2007, the gift was not completed in 2006. Because Mr. Schlapfer refused to concede that the gift was made in 2007, he was given the choice to opt out of or be removed from the OVDP. He withdrew.

After Mr. Schlapfer formally withdrew from the OVDP, the Commissioner prepared a substitute gift tax return for 2007 pursuant to section 6020(b). On October 17, 2019, the Commissioner issued Mr. Schlapfer a notice of deficiency for 2007 determining a gift tax liability of $4,429,949, and additions to tax under section 6651(a)(2) and (f) of $4,319,200. While residing in Florida, Mr. Schlapfer filed a Petition challenging the Commissioner's determinations.

The Commissioner filed a Motion for Summary Judgment asking the Court to find as a matter of law that (1) Mr. Schlapfer made a taxable gift of an insurance policy in 2007 and (2) that he is liable for additions to tax under section 6651(f), or in the alternative section 6651(a)(1) and (2). Mr. Schlapfer filed a Cross-Motion for Summary Judgment asking the Court to find as a matter of law that the Commissioner's period of limitation to assess the gift tax expired before the notice of deficiency

---

[5] For purposes of this Opinion, we need not resolve Mr. Schlapfer's domiciliary status.

**[\*9]** was issued because Mr. Schlapfer adequately disclosed the gift on his 2006 gift tax return. Mr. Schlapfer supplemented his Motion, and the Commissioner responded to the Supplement.

## *Discussion*

Before the Court are the parties' Cross-Motions for Summary Judgment. We are asked to decide whether the period of limitations to assess the 2007 gift tax expired before the Commissioner issued the notice of deficiency. To answer this question, we must decide whether Mr. Schlapfer adequately disclosed his gift on his gift tax return.

## I.  *Summary Judgment Standard*

We may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of showing that there is no genuine dispute as to any material fact. *Sundstrand Corp.*, 98 T.C. at 520. When a motion for summary judgment is properly made and supported, an opposing party may not rest on mere allegations or denials. Rule 121(d). Rather, the party's response, by affidavits or declarations, or as otherwise provided in Rule 121, must set forth specific facts showing there is a genuine factual dispute for trial. *Id.* In deciding whether to grant summary judgment, we view the facts and make inferences in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520.

## II.  *Gift Tax*

Section 2501(a)(1) imposes a tax on the transfer of property by gift. A gift is generally defined as any transaction where property is gratuitously passed to or conferred upon another for less than full and adequate consideration. I.R.C. § 2512(b); Treas. Reg. § 25.2511-1(c)(1). The amount of tax imposed is based on the value of the property transferred on the date the gift is complete.[6] I.R.C. § 2512(a); Treas. Reg. § 25.2511-2(a). The gift tax applies to a transfer regardless of whether the gift is direct or indirect, whether the property is real or personal, whether the property is tangible or intangible, or whether the transfer is in a trust or otherwise. I.R.C. § 2511(a). Individuals subject to the gift

---

[6] Treasury Regulation § 25.2511-2(b) provides that the transfer of property is not a complete gift unless the donor parts with dominion and control over the property with no power to change its disposition.

**[*10]** tax who make a transfer by gift must file a gift tax return, Form 709, for the year the transfer is made. I.R.C. § 6019; Treas. Reg. § 25.2501-1(a)(1).

Mr. Schlapfer filed Form 709 for 2006 on which he reported a transfer of stock by gift, but the Commissioner disagrees as to the characterization of the transferred property (EMG stock vs. UVL Policy) and the timing of the transfer (2006 vs. 2007). For purposes of this Opinion, we make no determination as to whether the gift is the EMG stock or the UVL Policy. We will analyze the applicable law under both. Additionally, for reasons discussed below, the timing issue is immaterial.

III.    *Statute of Limitations for Gift Tax Assessment*

Subject to various exceptions, the Commissioner generally has three years after a gift tax return is filed to assess any gift tax. I.R.C. § 6501(a), (c); *Estate of Brown v. Commissioner*, T.C. Memo. 2013-50, at *8–9. Section 6501(c)(9) provides an exception for certain gifts not shown on returns. It provides that the Commissioner may assess gift tax at any time for any gift of property, the value of which is required to be shown on a gift tax return and is not shown on such a return. I.R.C. § 6501(c)(9). This exception applies unless the gift has otherwise been "disclosed in such return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature of such item." *Id.*; Treas. Reg. § 301.6501(c)-1(f)(1). If a gift has been adequately disclosed on the gift tax return, or a statement attached to the return, that was filed for the year the transfer occurred, then the ordinary three-year period for assessment commences upon filing. I.R.C. § 6501(c)(9); Treas. Reg. § 301.6501(c)-1(f)(1) and (2).

This is true even if the gift disclosed is ultimately determined to be an incomplete transfer under Treasury Regulation § 25.2511-2 so long as there was adequate disclosure. Treasury Regulation § 301.6501(c)-1(f)(5) provides that

> [a]dequate disclosure of *a transfer that is reported as a completed gift on the gift tax return will commence the running of the period of limitations for assessment of gift tax on the transfer, even if the transfer is ultimately determined to be an incomplete gift* for purposes of § 25.2511-2 . . . . For example, if an incomplete gift is reported as a completed gift on the gift tax return and is

**[*11]** adequately disclosed, the period for assessment of the gift
tax will begin to run when the return is filed . . . .

(Emphasis added.) Hence, under this Treasury regulation, for purposes
of commencing the period of limitations, the focus is on when the
transfer was reported, not when the transfer was completed.

Here we will focus on whether Mr. Schlapfer adequately disclosed
the gift transfer reported on his 2006 gift tax return. The Commissioner
determined that the gift transfer was completed in 2007, and his notice
is predicated on that determination. However, when the transfer was
completed is immaterial. Even if we were to decide that the gift was
completed in 2007, Mr. Schlapfer's adequate disclosure of the gift on his
2006 return would suffice to commence the three-year period of
limitations upon the filing of that return. *See* Treas. Reg. § 301.6501(c)-
1(f)(5).

IV.   *Adequate Disclosure*

"A disclosure is 'adequate' if it is 'sufficiently detailed to alert the
Commissioner and his agents as to the nature of the transaction so that
the decision as to whether to select the return for audit may be a
reasonably informed one.'" *Thiessen v. Commissioner*, 146 T.C. 100, 114
(2016) (quoting *Estate of Fry v. Commissioner*, 88 T.C. 1020, 1023
(1987)). The Commissioner directs us to the reporting requirements for
strict compliance. *See, e.g.*, Treas. Reg. § 25.6019-4. But Treasury
Regulation § 301.6501(c)-1(f)(2) provides that transfers reported on a
gift tax return will be considered adequately disclosed if the return (or
a statement attached to the return) provides the following information:

> (i) A description of the transferred property
> and any consideration received by the transferor;
> (ii) The identity of, and relationship between,
> the transferor and each transferee;
> (iii) If the property is transferred in trust, the
> trust's tax identification number and a brief
> description of the terms of the trust, or in lieu of a
> brief description of the trust terms, a copy of the
> trust instrument;
> (iv) Except as provided in § 301.6501(c)-
> 1(f)(3), a detailed description of the method used to
> determine the fair market value of property
> transferred, including any financial data (for

**[\*12]**     example, balance sheets, etc. with explanations of any adjustments) that were utilized in determining the value of the interest, any restrictions on the transferred property that were considered in determining the fair market value of the property, and a description of any discounts, such as discounts for blockage, minority or fractional interests, and lack of marketability, claimed in valuing the property. . . . ; and

    (v) A statement describing any position taken that is contrary to any proposed, temporary or final Treasury regulations or revenue rulings published at the time of the transfer . . . .

These requirements can be satisfied by filing Form 709 with the required information, or if needed, an amended Form 709 with the required information. Rev. Proc. 2000-34, §§ 3 and 4, 2000-2 C.B. 186, 186. However, if an amended return is the one that satisfies adequate disclosure, then the period of limitations commences with the filing of the amended return, not the original return. *Id.*

Whether a statement attached to a gift tax return adequately discloses a gift is a question of fact. *Estate of Hicks Sanders v. Commissioner*, T.C. Memo. 2014-100, at \*7. Mr. Schlapfer argues that the period to assess gift tax has expired because he adequately disclosed the gift on his 2006 gift tax return. He points to four documents to support this claim: (1) the gift tax return; (2) a protective filing attachment; (3) Schedule F of Form 5471 for his 2006 tax return; and (4) the Offshore Entity Statement. The Commissioner argues that the period to assess gift tax did not expire because Mr. Schlapfer did not adequately disclose the gift. Specifically, he asserts that (1) the Offshore Entity Statement is not part of the 2006 gift tax return and it should not be considered to determine whether Mr. Schlapfer made an adequate disclosure of the gift; and (2) even if the Offshore Entity Statement is considered, Mr. Schlapfer still failed to adequately disclose the gift because he failed to satisfy all applicable requirements of Treasury Regulation § 301.6501(c)-1(f)(2).

A.     *Disclosure Contents We Can Consider*

The Commissioner argues that the Offshore Entity Statement is not among the documents we should consider in determining whether the gift was adequately disclosed. We disagree.

**[\*13]** We have addressed the question of what documents to consider for adequate disclosure in cases interpreting section 6501(e)(1) (regarding substantial income omissions), and we find that the rationale used in those cases applies with equal force here. Under section 6501(c)(9), the Commissioner may assess a gift tax at any time if a gift is not shown on a return unless the gift is "*disclosed in such return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature of such item.*" (Emphasis added.) Section 6501(e)(1)(B)(iii) has similar wording, providing that the period of limitations for the Commissioner to determine the amount omitted from gross income will extend to six years unless "*such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.*" (Emphasis added.) "Where the same word or phrase appears multiple times within a statutory text, it is generally presumed to have the same meaning each place it appears." *Whistleblower 22716-13W v. Commissioner*, 146 T.C. 84, 92–93 (2016) (citing *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932) ("Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.")). A review of applicable IRS guidance and a plain reading of the statute do not warrant a conclusion that Congress intended the similar phrases in section 6501(c)(9) and (e)(1) to be interpreted differently. Therefore, we look to adequate disclosure caselaw decided under section 6501(e)(1) for guidance in determining what documents can be used to prove adequate disclosure under section 6501(c)(9).

This Court has frequently looked beyond a taxpayer's return for purposes of determining adequate disclosure, especially where the return references a separate document. *See Reuter v. Commissioner*, T.C. Memo. 1985-607, 51 T.C.M. (CCH) 99, 102 (discussing *Benderoff v. United States*, 398 F.2d 132 (8th Cir. 1968), *Walker v. Commissioner*, 46 T.C. 630 (1966), *Roschuni v. Commissioner*, 44 T.C. 80 (1965), and *Rose v. Commissioner*, 24 T.C. 755 (1955)). For example, when the taxpayer's individual return references an information return (such as a partnership or S corporation return), we may look to those information returns to determine whether items were adequately disclosed. *See Reuter*, 51 T.C.M. (CCH) at 102. When deciding whether an item has been adequately disclosed, we may consider not only a return, but also documents attached to the return plus informational documents referenced in the return.

**[\*14]** The Offshore Entity Statement provided with the gift tax return must be considered in determining adequate disclosure. It was submitted to the OVDP in a disclosure packet that included the gift tax return. Furthermore, the protective filing attached to the gift tax return referenced controlled foreign company (CFC) stock, which alerted the IRS to look to the Offshore Entity Statement for information on the gift referred to in the gift tax return. We will consider the return and all documents accompanying the return. Therefore, the documents we will consider in determining whether Mr. Schlapfer adequately disclosed the gift are the gift tax return, the protective filing, all relevant Forms 5471, and the Offshore Entity Statement.

B.    *Strict vs. Substantial Compliance*

The Commissioner argues that Mr. Schlapfer did not adequately disclose the gift because he failed to strictly satisfy all applicable requirements of Treasury Regulation § 301.6501(c)-1(f)(2). Mr. Schlapfer disagrees, arguing that he strictly, or at least substantially, complied with all applicable requirements of the Treasury regulation.

The Commissioner may insist that taxpayers strictly comply with regulatory requirements, but in certain circumstances we have held that regulatory requirements can be satisfied by substantial compliance. *See, e.g.*, *Am. Air Filter Co. v. Commissioner*, 81 T.C. 709, 719 (1983). The question the Court must ask in determining whether to apply substantial or strict compliance to regulatory requirements is whether the requirements relate "to the substance or essence of the statute." *Bond v. Commissioner*, 100 T.C. 32, 41 (1993) (quoting *Taylor v. Commissioner*, 67 T.C. 1071, 1077 (1977)). If the requirement is essential, then strict adherence to all regulatory requirements is a precondition to satisfying the statute. *Id.* However, if the requirement is "procedural or directory in that [it is] not of the essence of the thing to be done . . . [it] may be fulfilled by substantial . . . compliance." *Id.* (quoting *Taylor*, 67 T.C. at 1077–78). This test requires us to examine section 6501(c)(9) to determine whether the adequate disclosure requirements of Treasury Regulation § 301.6501(c)-1(f)(2) go to the essence of the statute or are merely procedural or directory.

Section 6501(c)(9) provides that the Commissioner may assess a gift tax at any time if a taxpayer fails to report a gift on a gift tax return, unless the gift is otherwise adequately disclosed on the return or a statement attached to it. Its essence is to provide the Commissioner with a viable way to identify gift tax returns that should be examined with

**[\*15]** minimum expenditure of resources. T.D. 8845, 1999-2 C.B. 683, 684. The purpose of the adequate disclosure requirements in the regulation is to provide taxpayers with guidance on what constitutes adequate disclosure for purposes of section 6501(c)(9).

The Department of the Treasury has acknowledged that substantial compliance can satisfy the adequate disclosure requirements. In Treasury Decision 8845, which promulgated Treasury Regulation § 301.6501(c)-1(f), Treasury specifically addressed substantial compliance. It rejected a recommendation that the regulation should expressly allow substantial compliance because of "the difficulty in defining and illustrating what would constitute substantial compliance." T.D. 8845, 1999-2 C.B at 685. It went on to note, however, that its rejection of the suggestion did not mean "that the absence of any particular item or items would necessarily preclude satisfaction of the regulatory requirements, depending on the nature of the item omitted and the overall adequacy of the information provided." *Id.* That statement describes, and accepts, the very essence of substantial compliance. Therefore, we conclude that the adequate disclosure requirements can be satisfied by substantial compliance.[7]

C.    *Whether Mr. Schlapfer Strictly or Substantially Complied With the Adequate Disclosure Requirements*

Under Treasury Regulation § 301.6501(c)-1(f)(2), a transfer will be considered adequately disclosed if the taxpayer provides the following information on a gift tax return or statement attached to it: (i) a description of the gift and consideration received for the gift; (ii) the identities of and relationship between the transferor and transferee; (iii) if the gift is transferred in trust, the trust tax identification number and a description of the terms of the trust; (iv) a detailed description of the method used to determine the fair market value of the gift; and (v) a statement describing any position taken that is contrary to Treasury regulations or revenue rulings published at the time of the transfer. Here, we need to decide only whether Mr. Schlapfer strictly or substantially satisfied requirements (i), (ii), and (iv). A taxpayer will be

---

[7] Generally, "[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *Badaracco v. Commissioner*, 464 U.S. 386, 391 (1984) (quoting *E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924)). However, we have applied the substantial compliance doctrine to situations where we are tasked in determining whether a return was sufficient to commence the running of the statute of limitations. *See, e.g.*, *Gen. Mfg. Corp. v. Commissioner*, 44 T.C. 513, 523–24 (1965).

**[\*16]** deemed to have substantially complied with a requirement if it is procedural and the taxpayer fulfilled all other essential purposes of the requirement. *See Am. Air Filter Co.*, 81 T.C. at 719. Therefore, if Mr. Schlapfer fails to strictly comply with a requirement, we will find that he substantially complied with it if he has fulfilled all essential purposes of the requirement. We will look to the gift tax return, the protective filing, all relevant Forms 5471, and the Offshore Entity Statement to determine compliance.

1.    *Description of the Property and Consideration Received*

Assuming the gift is the EMG stock, Mr. Schlapfer has strictly satisfied this requirement. Treasury Regulation § 301.6501(c)-1(f)(2)(i) requires that Mr. Schlapfer's gift tax return, or a statement attached to it, provide a description of the transferred property and any consideration he received.[8] The 2006 Instructions for Form 709 instructed taxpayers to "[d]escribe each gift in enough detail so that the property can be easily identified." 2006 Instructions for Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, at 8. For stock, the instructions specify that the taxpayer should disclose the number of shares and identify whether they are common or preferred. *Id.* Mr. Schlapfer provided the required information via three attachments: the protective filing, the Offshore Entity Statement, and the 2006 Form 5471. On the protective filing attached to the return, Mr. Schlapfer stated that he made a gift of CFC stock valued at $6,056,686. On the Offshore Entity Statement, he stated that "EMG was established by the Taxpayer in 2003, and was beneficially owned by the Taxpayer until July 6, 2006, at which time the Taxpayer gifted his entire interest in EMG to his mother." Lastly, on the 2006 Form 5471, he disclosed the number of and type of EMG shares. Together, these statements provided the IRS with a description of the property.

However, if the gift is the UVL Policy, Mr. Schlapfer did not strictly satisfy this requirement. He did not provide any information on his gift tax return, or on documents attached to it, that directly referenced or described a transfer of a life insurance policy. But this failure does not preclude him from satisfying adequate disclosure. As previously mentioned, disclosure is adequate if it is sufficiently detailed to alert the Commissioner to the nature of the transaction so that the decision to select a return for audit is reasonably informed. *Thiessen*,

---

[8] Mr. Schlapfer transferred his shares of EMG stock for no consideration.

**[\*17]** 146 T.C. at 114. And when finalizing the adequate disclosure regulations, Treasury provided "that the absence of any particular item or items would [not] necessarily preclude satisfaction of the regulatory requirements, depending on the nature of the item omitted and the overall adequacy of the information provided." T.D. 8845, 1999-2 C.B at 685. Thus, these "regulatory requirements" are not actually required. A requirement does not have to be satisfied depending on the importance of the requirement and what information is provided by the taxpayer. Furthermore, the Treasury Regulations provide that "[a] transfer will be adequately disclosed . . . *only if* it is reported in a manner adequate to apprise the [IRS] of the nature of the gift . . . . Transfers reported on the gift tax return as transfers of property by gift *will be* considered adequately disclosed . . . if the return . . . provides the following information." Treas. Reg. § 301.6501(c)-1(f)(2) (emphasis added). The difference between the wording used in these two sentences informs us that the requirements are not mandatory, but act as guidance to taxpayers to inform them on a way to satisfy adequate disclosure. Thus, we must determine whether Mr. Schlapfer's description of the property transferred was sufficient to alert the Commissioner to the nature of the gift.

Mr. Schlapfer provided enough information to satisfy this requirement through substantial compliance. While he may have failed to describe the gift in the correct way (assuming the gift is the UVL Policy), he did provide information to describe the underlying property that was transferred. Mr. Schlapfer asserts that he chose to disclose the assets held in the insurance policy instead of the actual policy because the OVDP required him to disregard entities holding foreign assets. The UVL Policy's value comes primarily from EMG stock, so Mr. Schlapfer's describing the transferred property as EMG stock goes to the nature of the gift. Because this description was sufficient to alert the Commissioner to the nature of the gift, Mr. Schlapfer substantially complied with this requirement.

### 2. *Identity of the Parties*[9]

Mr. Schlapfer did not strictly satisfy this requirement. Treasury Regulation § 301.6501(c)-1(f)(2)(ii) requires that Mr. Schlapfer provide the identity of, and his relationship to, each transferee. Mr. Schlapfer has stated various times that he transferred property by gift to his

---

[9] For this requirement, it is immaterial whether the gift is the stock or the life insurance policy; therefore we do not analyze it separately for each gift.

**[\*18]** mother, aunt, and uncle. However, the Offshore Entity Statement states that he "gifted his entire interest in EMG to his mother;" there was no mention of his aunt or uncle. Because his return and documents attached thereto failed to identify his aunt and uncle as transferees, he did not strictly comply with this requirement.

But Mr. Schlapfer substantially complied with this requirement. This requirement was procedural, and a failure to list the identity and relationship of each transferee was not essential to the overall purpose of the requirement, which was to provide the IRS with enough information to understand the nature of the transfer. Mr. Schlapfer's statement on the Offshore Entity Statement listing his mother as the transferee provided the IRS with enough to understand the relationship between Mr. Schlapfer and the transferee, a member of his family. His failure to provide the names of his aunt and uncle does not make a meaningful difference in understanding the nature of the transfer. Therefore, we find that he substantially complied with the requirement when he identified his mother as the transferee.

3.      *Description of Method Used to Determine FMV of Gift*

Mr. Schlapfer did not strictly satisfy this requirement. Treasury Regulation § 301.6501(c)-1(f)(2)(iv) requires that Mr. Schlapfer provide a detailed description of the method used to determine the fair market value of property transferred, including any financial data (balance sheets, etc. with explanations of any adjustments). Mr. Schlapfer did not provide any statement describing how he determined the fair market value of the gift, regardless of whether it is the EMG stock or the UVL Policy. Therefore, he failed to strictly satisfy this requirement.

However, Mr. Schlapfer substantially complied with this requirement. Assuming the gift is the EMG stock, Mr. Schlapfer provided enough financial information to apprise the Commissioner of the method used to determine its fair market value. The 2006 instructions for Form 709 explained that the purpose of this requirement is to provide the IRS with information on how the taxpayer determined the gift's fair market value. *See* 2006 Instructions for Form 709, at 8. The instructions also identified documents that could be submitted to satisfy this requirement. *Id.* ("For stock of close corporations or inactive stock, attach balance sheets, particularly the one nearest the date of the gift, and statements of net earnings or operating results and dividends paid for each of the 5 preceding years.").

**[\*19]** Mr. Schlapfer provided all the documents identified in the instructions. His Forms 5471 for 2004, 2005, and 2006 enclosed balance sheets, statements of net earnings, dividends paid, and operating results. Furthermore, his Offshore Entity Statement stated that "[t]axpayer is taking into account all of the income earned by the accounts underlying EMG in the enclosed Amended U.S. Individual Tax Returns during the years he controlled and beneficially owned EMG." Although Mr. Schlapfer did not provide all the financial documentation listed in the regulation, he provided the information identified in the 2006 Form 709 instructions, which was enough to show the IRS how he determined the fair market value of the EMG stock. Therefore, he substantially complied with this requirement.

Furthermore, Mr. Schlapfer substantially complied even if the gift is the UVL Policy. The UVL Policy's principal asset is the EMG stock, and the documents we considered above were enough to apprise the Commissioner of the method used to determine the fair market value of the EMG stock. Because the UVL Policy's value stems primarily from the EMG stock, those same documents can be used to illustrate the method used to determine the fair market value of the UVL Policy. Accordingly, we find that Mr. Schlapfer substantially complied with this requirement.

## V.    *Conclusion*

Mr. Schlapfer strictly or substantially complied with Treasury Regulation § 301.6501(c)-1(f)(2)(i), (ii), and (iv) by way of his gift tax return, protective filing, Offshore Entity Statement, and Forms 5471. As a result, he adequately disclosed the gift on his 2006 gift tax return, causing the three-year assessment period to commence on November 20, 2013, when he submitted his disclosure package to the OVDP, and end on November 30, 2017 (three years after that date including extensions). Therefore, we conclude that the period of limitations to assess the gift tax expired before the Commissioner issued the notice of deficiency. Accordingly, we will deny the Commissioner's Motion for Summary Judgment and grant Mr. Schlapfer's Cross-Motion for Summary Judgment.

To reflect the foregoing,

*An appropriate order and decision will be entered.*